## G. H. THREADGILL v. J. B. BICKERSTAFF ET AL.

### No. 780.

1. **Legal Title—Construction of Conveyance.**—A conveyance reciting a consideration and declaring that the grantor has sold unto the vendee a tract of land described, passes the legal title, although followed by an obligation binding the grantor to execute a deed in fee with warranty * * * "as soon as the deed for the same may be obtained from the State." So also a transfer by the vendee annexed to such conveyance, transferring all the right and title thereto, will pass the legal title to the land. After thirty years these documents as ancient instruments, having been produced by the subvendee who had asserted title with continuous payment of taxes, were sufficient evidence to entitle recovery against parties claiming under heirs of the grantor in the first named instrument, without proof of payment of consideration or of the execution of the instrument.

2. **Harmless Error.**—The admission of evidence of general repute in the neighborhood of the land in controversy as to the ownership, though erroneous, was harmless under the circumstances. See example.

3. **Equitable Title—Stale Demand.**—Owner of an equitable title is not required to assert it by suit so long as not adversely questioned by the party holding the legal title. But in this case no question of stale demand or of equitable title arose.

4. **Improvements in Good Faith.**—The jury having found for the defendant upon suggestion of improvements in good faith. he could not complain of the failure of the court to instruct the jury that they were judges of the credibility of the witness. The appellant claimed and testified to a much larger value of improvements than that allowed by the jury.

5. **Recorded Instruments—Certificate of Acknowledgment.**—A certificate by notary public correct in other respects stated, that on this day personally appeared Horace Baker and C. C. Baker, * * * and acknowledged to me that *he* executed the same for the purpose and consideration therein expressed." *Held*, the certificate was insufficient, and record under it void. Where more than one person is mentioned

in the certificate as makers of the deed, the acknowledgment should be by each, and the certificate should show it.

6. **Refusal to Postpone Trial—Want of Diligence.**—Deeds offered as recorded instruments were excluded because not properly recorded, on account of defective certificate of acknowledgment. *Held*, not error to refuse to postpone the trial to procure attendance of the notary before whom the deeds had been acknowledged, for purpose of proving their execution.

APPEAL from Falls.    Tried below before Hon. L. W. GOODRICH.

*Rice, Patrick & Scott*, and *Williams & Evans*, for appellant.—The acknowledgment of a deed is liberally construed and a substantial compliance with the statute alone required.    Garrett v. Christopher, 74 Texas, 453; Richardson v. Levi, 67 Texas, 359; Burns v. Goff, 79 Texas, 236; Talbert v. Dull, 70 Texas, 675; Belcher v. Weaver, 46 Texas, 293; Watkins v. Hall, 57 Texas, 1; Little v. Weatherford, 63 Texas, 640; Wilson v. Simpson, 16 S. W. Rep., 40; Dev. on Deeds, sec. 27; Webb on Rec. of Title, sec. 27.

Counsel cited upon other matters: Rev. Stats., arts. 2248, 2209; Parks v. Cauble, 58 Texas, 216; Bounds v. Little, 75 Texas, 316; Mitchell v. Matson, 7 Texas, 3; Floyd v. Rice, 28 Texas, 341; Grigsby v. May, 57 Texas, 255; Jourdan v. Healey, 19 N. Y., 240; Chamberlin v. Boon, 74 Texas, 659; Boon v. Chamberlin, 82 Texas, 480; Scott v. Allen, 1 Texas, 508.

*J. A. Martin*, for appellees.—1. Limitation applies to a legal title and laches to an equitable title.    Whether appellees' title was legal or equitable, they could neither be barred by limitation nor guilty of laches until there had been some adverse claim and assertion of right to the land in controversy for ten years prior to the filing of the suit.

2. It is necessary to a proper certificate of acknowledgment of a deed or other instrument that it should appear that the maker or makers were known to the officer to be the person or persons who signed the same, and that he or they stated that he or they executed the same. Huff v. Webb, 64 Texas, 286; Sowers v. Peterson, 59 Texas, 220; Stephens v. Mott, 81 Texas, 119; McKie v. Anderson, 78 Texas, 210.

FISHER, CHIEF JUSTICE.—This is an action of trespass to try title by appellees, J. B. Bickerstaff, and Frances, his mother, complaining of appellant, G. H. Threadgill, filed the 25th day of June, 1891, and tried before the District Court of Falls County on the 27th day of August, 1892, the plaintiffs having amended their original petition by their first amendment, filed July 22, 1892.    The land in controversy is the southern part of the Samuel Gregg survey, in Falls County.

The defendant, Threadgill, filed his first amended answer July 21, 1892, pleading general demurrer, not guilty, laches on part of the

plaintiff, and improvements in good faith, amounting to the sum of $1587.50.

Briefly stated, the plaintiffs claim that they are the heirs of Seaborn Bickerstaff, who was the brother of Henry Bickerstaff, the assignee of Samuel Gregg, deraigning title from Samuel Gregg by this assignment, and as heirs of Seaborn and Henry Bickerstaff. Plaintiffs also claim, that Henry Bickerstaff conveyed the land in question to Hiram Baker in 1847, and that Hiram Baker thereafter conveyed his interest to Seaborn Bickerstaff in 1852, through whom, by this additional chain of title, they claim the land.

Briefly stated, defendant admits that Henry Bickerstaff did convey the land in question to Hiram Baker, in 1847, and that Caroline Cary, the widow of Hiram Baker, and C. C. Baker and Horace Baker, her sons by Hiram Baker, are the heirs of Hiram Baker, through mesne conveyances, from whom defendant deraigns his title.

Both parties agree that Hiram Baker did take title from Henry Bickerstaff, the plaintiff claiming that Baker parted with this title in his life-time by conveyance to Seaborn Bickerstaff, in 1852, the defendant claiming that Baker did not part with his title, but died seized thereof; but that, if he did part with his title before his death, the plaintiff has failed to prove such conveyance on his part.

This statement is taken from the appellant's brief.

The appellees, by the judgment of the court below, recovered the land, and judgment went in appellant's favor for $500 for improvements.

*Findings of Fact.*—This court finds the following as the facts of the case:

1. The land in controversy was granted by the State of Texas by patent to Henry Bickerstaff, assignee of Samuel Gregg.

2. May 15, 1847, Henry Bickerstaff, by the following instrument, conveyed the land in controversy to Hiram Baker:

"STATE OF TEXAS, }
   "Titus County.   }

"Know all men, that I, Henry Bickerstaff, for the consideration of three hundred and twenty dollars, have this day sold unto Hiram Baker, and by these presents do sell and convey, three hundred and thirty-two acres of land, situated in the County of Milam, being the south part of a survey of nine hundred and ninety-six acres made for me by Hiram Baker, deputy surveyor, by virtue of the headright certificate of Samuel Gregg, granted in Red River County, for two-thirds league and labor land; the said three hundred and thirty-two acres are bounded on the north by the remainder of the survey aforesaid, on the east by a survey made in the name of Geo. W. Boykin, on the south by a league survey for one McLennan, on the west by a league

survey in the name of N. Robinson. I, the said Henry Bickerstaff, bind myself, my heirs, and legal representatives, to give and execute a deed in fee with warranty of the parcel aforesaid, hereby conveyed, and his legal representatives, as soon as the deed for the same may be obtained from the State.

"In testimony whereof, I hereunto set my hand, and seal made with a scroll, this the 15th of May, 1847.

"Witness: 　　　　　　　　　　　[Signed]　　"HENRY BICKERSTAFF.

　　"C. A. MOORE,
　　"THOS. WILLISON."

3. August 28, 1852, Hiram Baker executed the following paper:

"STATE OF TEXAS, }
"Hopkins County. }

"Know all men, that I, Hiram Baker, for the consideration of ($332) three hundred and thirty-two dollars, the receipt is hereby acknowledged, do hereby transfer all my right, title to the above obligation hereunto annexed (given unto Hiram Baker aforesaid) unto Seaborn Bickerstaff, of Titus County, his heirs and assigns; by these presents hereby relinquish unto the said Seaborn Bickerstaff, all the privileges thereunto belonging unto him, the said Seaborn Bickerstaff, to have and to hold the same unto him, the said Bickerstaff, forever.

"In testimony whereof, I hereunto set my hand, and seal made with a scroll, this the 28th day of August, A. D. 1852.

"Witness: 　　　　　　　　　　　[Signed]　　"HIRAM BAKER.
　　"LUCY ANN CULLOM."

This paper was attached to the conveyance of Henry Bickerstaff by sealing-wax.

4. These two above transfers were in the possession of Seaborn Bickerstaff from the date of their execution to the time of his death, and afterwards they were in the possession of the appellees, and came from their possession when offered in evidence at the trial of this cause. The appellees, since the death of Seaborn Bickerstaff, and he before his death, have claimed to own the land and have paid taxes on it.

5. Seaborn Bickerstaff died in December, 1882, intestate. Appellee Frances Bickerstaff was his wife, and appellee J. B. Bickerstaff was his son. The land in controversy was conveyed to Seaborn Bickerstaff during the time of his marriage with Frances Bickerstaff.

6. Hiram Baker died in March, 1853, and left surviving his wife, now Mrs. Caroline Cary, and as children of said marriage, Horace,

Chancy, and Lucy. Lucy died, leaving three children as the fruits of the marriage with one Rawson.

7. August 15, 1889, Caroline Cary, Horace Baker, and Chancy Baker executed and delivered to W. A. Patrick the following instrument:

"THE STATE OF TEXAS, ⎱
   "County of Parker.    ⎰

"Know all men by these presents, that we, Caroline E. Cary, Horace Baker, and Chancy C. Baker, of Parker County, and State aforesaid, have and do by these presents empower W. A. Patrick, of Marlin, Falls County, Texas, for us and in our name to enter upon, take possession of, to perfect, and, if necessary, to institute such suit or suits as to him shall seem best and proper to all lands in the county of Falls and State of Texas, to which we are entitled or may be entitled to, from or through Hiram Baker, deceased, and as compensation to our said agent, W. A. Patrick, we agree and bind ourselves to make deed to said W. A. Patrick to an undivided one-half of all lands that is recovered by suit or compromise or otherwise, as soon as the said Patrick acquires possession and perfects title, but in no case to make deed or compromise without first referring to us for approval; and it is further agreed, that said W. A. Patrick is to pay all expenses, save and except proof of heirship and acknowledgment fees.

"Given under our hands, this the 15th day of August, 1889.

[Signed]      "CAROLINE E. CARY,
              "HORACE BAKER,
              "CHANCY C. BAKER."

8. July 10, 1890, W. A. Patrick, B. H. Rice, and S. R. Scott, by general warranty deed, conveyed the land in controversy to appellant.

9. The appellant went into possession of the land in good faith and made improvements thereon in good faith to the extent and value as allowed him by the verdict of the jury.

10. No possession was taken of the land by appellant or those under whom he claims prior to 1889.

*Conclusions of Law.*—The appellant's first and second assignments of errors may be considered together in disposing of the questions raised by them. The testimony of J. B. Bickerstaff and Mrs. Bickerstaff, objected to in the first assignment of error, was evidently admitted upon the theory that the conveyance from Hiram Baker to Seaborn Bickerstaff was an imperfect transfer in the nature of a bond for title, or a contract simply to convey the land, and that the plaintiffs, to recover, must show in connection with this instrument the payment of a consideration by Seaborn Bickerstaff to Baker for the pur-

chase. The evidence was also admitted for the purpose of proving the execution of the paper by Baker. It is claimed that these witnesses could not testify as to these transactions between Seaborn Bickerstaff and Baker, as they fall within the inhibition of article 2248, Sayles' Civil Statutes.

It is unnecessary for us to decide this question, because—

1. In our opinion, the instrument executed by Henry Bickerstaff to Hiram Baker conveys to the latter the legal title to the land, and the instrument executed by Baker to Seaborn Bickerstaff conveys to the latter the same character of title that Baker acquired from Henry Bickerstaff. The instrument executed by Baker, when construed in connection with the instrument to which it refers, not only conveys that instrument, but the land and title conveyed by it, and that instrument—that is, the conveyance from Henry Bickerstaff to Hiram Baker—may be looked to for a description of the land. The case of Harlowe v. Hudgins, 84 Texas, 109, is in point on these questions.

2. These instruments, the one from Henry Bickerstaff to Hiram Baker, and from Baker to Seaborn Bickerstaff, are both over thirty years of age, and are apparently free of suspicion, and come from the custody of appellees, who have been claiming the land under them.

Thus considering these instruments, the evidence offered by these witnesses, showing the facts leading to their execution, and the consideration upon which the transfer from Baker was based, may be entirely disregarded and not considered, and the instruments may stand without the aid of this evidence as sufficient in showing title in appellees. Operating as they do by reference solely to the recitals contained in the instruments as conveyances of the land, there was no necessity, in order to make them complete as conveyances, that they should receive the aid of the parol evidence of these witnesses; and both instruments at the time of the trial being over thirty years of age, and free from suspicion, and coming from the proper custody, prove themselves without evidence of their execution.

The fourth assignment of error complains of the admission of evidence tending to show by general repute in the neighborhood of the land in controversy that the title thereto was in appellees.

We are not prepared to say that this evidence was admissible, but its admission, we think, was harmless. It was admitted probably as having some bearing in tending to negative a possession in good faith by appellant on the issue of improvements, and also as a fact tending to charge the appellant with notice of the title of appellees in anticipation that the appellant would rely upon an innocent purchase of the land without notice of the claim or title of appellees. On the issue of improvements in good faith, the judgment of the court below is in favor of the appellant, clearly demonstrating that the evidence did not influence the jury to find against him, and that its admission, if

erroneous, resulted in no injury to him. It could have had no possible bearing on the matter of innocent purchaser, for that is not a question in the case. The exclusion of the deeds by which appellant attempted to connect himself with the title of Baker—which will be hereafter noticed—placed him in the attitude of a party without title, either legal or equitable; hence he was not in a position to assert an innocent purchase of the land.

The fifth assignment of error is to the effect, that the court erred in failing and refusing to give a charge presenting the issue of laches or stale demand pleaded by the appellant.

There was no error committed in this respect, as, in our opinion, laches and stale demand are not in the case. The facts show that Hiram Baker was common source of title, and that he before his death conveyed the land to Seaborn Bickerstaff, under whom the appellees claim. There is no evidence showing that Baker, during his life-time, or his heirs and those claiming under them, after his death, ever asserted any right in the land in a way to make their claim known until the execution of the power of attorney to Patrick in 1889, and the possession thereunder in that year for Mrs. Cary and the two Baker children. This was only about two years prior to the filing of this suit. Up to this time, it seems, the claimants under Baker were content to not question or disturb the title formerly executed by Baker to Seaborn Bickerstaff; and, assuming this title to be an equitable one, those holding this title under Bickerstaff would not be required to assert it by suit so long as it was recognized or so long as it was not adversely questioned by the Baker heirs. The holder of the title from Baker could rest in security, and would not be required to sue until there was some one asserting adversely to it or in possession of the land. But we need not rest the disposition of this assignment upon this view of the question, as we are of the opinion that the conveyance executed by Baker to Seaborn Bickerstaff passes the legal title to the land. By looking to the transfer from Henry Bickerstaff to Hiram Baker, it will be seen that it conveys to Baker the land, and that instrument embodies all of the elements of a present and perfect conveyance. It expresses a consideration received, and for it "have this day sold unto Hiram Baker, and by these presents do sell and convey, three hundred and thirty-two acres of land," here describing the land and stating that it was surveyed by Hiram Baker, and the instrument in conclusion states, that when patent is obtained from the State, Bickerstaff will execute to Baker a deed in fee with covenants of warranty. This last recital is simply a covenant to execute a further deed upon the happening of a certain event; its effect is not to control or limit the scope and effect of the instrument as an existing and present conveyance of land. If this covenant was not complied with, Baker could hold the land by virtue of this conveyance. Attached to this

conveyance is the one executed by Hiram Baker, August 28, 1852, to Seaborn Bickerstaff. For a consideration recited, this instrument states a transfer of all "my right, title to the above obligation hereunto annexed (given unto Hiram Baker aforesaid) unto Seaborn Bickerstaff," and relinquishes unto Bickerstaff all privileges thereunto belonging to him, and to hold the same forever. This was not only a transfer of the instrument to which this paper refers, but in legal effect a transfer to Seaborn Bickerstaff of the land described in the conveyance "annexed to" and referred to by this paper.

A like construction was placed by the court upon a similar transfer in the case of Harlowe v. Hudgins, 84 Texas, 109; but in that case the instrument was not as complete in showing an intention to convey the land as in the case here.

There is no merit in the question raised by the seventh assignment. The court, under the facts of this case, was not required to submit to the jury the question of the credibility of the witnesses or any other question but that of improvements in good faith, and as to title could have with propriety peremptorily instructed the jury to find for the appellees. On the issue of improvements in good faith, the appellant has a verdict and judgment in his favor, consequently failing to instruct the jury as complained of is harmless error.

There was no error in excluding the deeds executed by Mrs. Cary and Horace and C. C. Baker. They were offered under the statutes as recorded instruments, and were excluded on the ground that they were not properly acknowledged. These acknowledgments to the two deeds are as follows:

"STATE OF TEXAS, }
"County of Parker. }

"Before J. K. P. Shirley, notary public in and for said county and State, on this day personally appeared Horace Baker and C. C. Baker, to me personally known to be the persons who names subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purpose and consideration therein expressed. Given under my hand," etc.

"STATE OF TEXAS, }
"County of Parker. }

"Before me, J. K. P. Shirley, notary public in and for said county and State, on this day personally appeared Caroline E. Cary, Horace Baker, and C. C. Baker, to me known to be the person whose names subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purpose and consideration therein expressed. Given under my hand," etc.

These acknowledgments state that "he" executed the deeds, etc. Where more than one person is mentioned in the certificate of acknowledgment as makers of the deed and as appearing before the officer for the purpose of acknowledging the execution of the instrument, the acknowledgment of each of the execution of the instrument should be made, and this fact should be stated in the certificate of the officer. Where more than one of the makers of the instrument appear for this purpose, and the certificate states this fact, and that "he" acknowledged he executed it, renders the certificate uncertain, and to a certain extent meaningless. It is impossible to determine to whom the pronoun "he" refers when used under such circumstances. It is the same as if no pronoun had been used in order to distinguish and designate the party that appeared and acknowledged the instrument.

In Huff v. Webb, 64 Texas, 286, the certificate of the acknowledgment was as follows:

"STATE OF TEXAS, ⎫
"County of Brown. ⎬

"Before me, W. H. Skelton, J. P. and ex officio notary public in and for the county of Brown, personally appeared G. I. Goodwin, to me well known, party to the above instrument of writing bearing date the 9th day of April, A. D., 187—, and acknowledged that —— had signed, sealed, and delivered the same for the purposes and consideration therein stated. In testimony," etc.

The court, in holding the acknowledgment insufficient, says:

"It is necessary to a proper certificate of acknowledgment of a deed or other instrument that it should appear that the maker appeared before the officer and stated that he executed the same. This can not be inferred from the fact that he appeared before the officer and acknowledged that some person not mentioned or indicated had executed it."

On account of the defective acknowledgment, the deeds were not entitled to be recorded, and therefore were inadmissible as recorded instruments.

We do not think there was any abuse of discretion upon the part of the trial court in refusing to postpone or continue the trial of the case in order to allow appellant an opportunity to procure the testimony of the notary who took the acknowledgments to the excluded deeds, in order to prove the execution of those instruments. The appellant, as a matter of law, before he entered into the trial of the case, was bound to take notice that the acknowledgments to the deeds were defective, and that they could not be admitted in evidence under the statute authorizing the admission of duly recorded instruments. With this fact before him and within his knowledge, he makes no effort to procure the absent testimony before trial, nor was any reasonable ex-

cuse offered for his negligence in that respect; but, upon the contrary, he announces ready and goes to trial, knowing as a matter of law that these deeds upon objection would not be admissible in evidence.  Under these circumstances, when he went into the trial he risked the consequences and assumed the hazard that would result from a timely objection to the admission in evidence of these deeds.  Thus situated, and assuming the risks, his request for delay comes too late.

The jury were not absolutely bound to accept the value placed upon the improvements by the appellant in his testimony, and under the evidence they were warranted in fixing the value at the amount stated in the verdict.

The questions raised by the eleventh assignment of error have in effect been passed upon in the disposition of other questions. We think the title to the land passed from Hiram Baker, and that it is now held by the appellees. The appellant is not in a position to assert an innocent purchase of the land, for the reason that he is not connected with the title of Baker.  The deeds upon which he relied for this purpose were properly excluded.

We find no error in the record, and affirm the judgment.

*Affirmed.*

Delivered May 30, 1894.