**TOMAHAGEN v. SARBER et al.**

No. 3411.

Court of Civil Appeals of Texas. Amarillo.
May 21, 1930.

C. D. Russell and Kinder & McMath, all of Plainview, for appellant.

Oxford & Oxford, of Plainview, for appellees.

## HALL, C. J.

This suit was instituted by C. M. Sarber of the state of Kansas and C. C. Covert of Hale county, against J. A. Tomahagen, a resident citizen of Chicago, in the form of trespass to try title to recover numerous lots in the town of Olton, Lamb county. By agreement, the case was transferred and tried in Hale county.

The defendant answered by a plea of not guilty and set up the statute of limitation of four years. By a supplemental petition, the plaintiffs alleged that on April 3, 1909, plaintiffs C. M. Sarber, W. P. Soash, and John R. Jones owned the lots described in plaintiffs' original petition; that Soash held the title in his own name in trust, each party owning an undivided one-third interest; that, on said last-named date, Soash conveyed all of said property, together with other lots in the town of Olton, to defendant Tomahagen in trust, in order that he might convey to purchasers of town lots and reconvey to Soash within a short period thereafter all lots remaining unsold; that Tomahagen did convey to certain purchasers certain lots in the town of Olton, and on April 28, 1909, reconveyed to Soash what was thought to be all unsold lots, but through mutual mistake of the parties a large number of the lots described in the original petition and unsold were not included in said reconveyance; that while the conveyance to Tomahagen was, upon its face, a deed absolute, the property was in truth and in fact conveyed to Tomahagen in order to enable him to convey to the purchasers of lots in the Olton town site the respective lots to which each was entitled; that the fact that Tomahagen had not reconveyed all the unsold lots was not ascertained by the said Soash and his copartners and assigns until about the year 1926; that the said Tomahagen never repudiated his trust by word or by deed in any manner up to the time of the institution of this suit, and still holds said property in trust for the benefit of plaintiffs; that the deed from Soash to Tomahagen casts a cloud upon the title of plaintiffs, which they pray be removed.

In reply, the defendants pleaded the two and four years' statutes of limitation, and further alleged that plaintiffs' cause of action, if any, accrued about nineteen years before the commencement of this suit, by reason of which fact plaintiffs' demand is now stale and plaintiffs are guilty of laches, barring their right to recover.

The case was tried to the court without a jury, resulting in a judgment for plaintiffs, for all of the lots sued for.

The undisputed testimony shows that Soash, Sarber, and Jones purchased all of section 35, block O–2, in Lamb county, Tex., in 1908, taking the conveyance in the name of W. P. Soash. They then plotted the town of Olton on said section and began selling town lots to purchasers at $35 per lot under an agreement that at a later date there would be a drawing in which each purchaser would have his lot assigned him by lot; that Soash had his home and office in Waterloo, Iowa, and was bringing immigrants into Texas from other states selling great quantities of land and employing several hundred subagents for this purpose. It further appears that he put his army of agents in the field selling lots in the Olton town site and succeeded in selling several hundred of them; that the purchasers of the undesignated lots elected a club captain for each twenty lots sold, said captain to draw lots for the purchasers in his club, and that no purchaser knew what lot he was buying until after the drawing; that Soash brought a train load of immigrants, each of whom had purchased one or more lots in the town site. The train was delayed en route, and, while stopping at Dalhart, the purchasers had the drawing. In disposing of the lots, it was agreed that the purchasers could select from among their number a man of their choice to whom Soash would deed the entire town of Olton, and that the grantee so selected should convey to each purchaser the lot or lots drawn by them respectively, and, after the purchasers had received the lots so sold, the trustee would reconvey to Soash the remainder of the lots. Tomahagen was elected by the purchasers as the grantee and trustee to whom the town site should be conveyed. He accepted the trust, and Soash conveyed him the entire town site to be held as trustee, although the deed was absolute upon its face. At the time of the drawing, the captain of each twenty lots kept a list for purchasers in his club, Soash and Tomahagen also retaining copies of said lists. All deeds to purchasers were prepared in Soash's office at Waterloo and forwarded to Tomahagen in Chicago for execution. At and about the same time, the deed purporting to reconvey to Soash

all unsold lots was prepared in Soash's office and forwarded to Tomahagen. Tomahagen executed all of these instruments, but through mistake of all parties about two hundred eighty unsold lots were not described and included in the reconveyance. It appears that Tomahagen had bought twenty of the lots himself, which are not included in this suit. Soash, Sarber, Jones, and Tomahagen were all nonresidents of Texas, and none of them had any knowledge of the fact that the reconveyance executed by Tomahagen to Soash omitted the two hundred eighty lots until during the year 1926, when Sarber came to Texas and examined the deed records at Olton. At that time, Sarber had purchased Soash's one-third interest in all unsold lots, and plaintiff Covert had purchased the one-third interest of Jones. Upon discovering the omission in the deed, efforts were made to secure from Tomahagen a quitclaim deed to the remainder of the unsold lots. Appellees' counsel prepared such a deed and forwarded to him in behalf of Covert and Sarber. In reply to this letter, Tomahagen wrote that his attorney was out of the city of Chicago for a few days, but as soon as he returned he would execute the deed, further stating: "This should have been done long ago." He failed, however, to execute the deed later. During the year 1926, a land company operating at Olton wrote Tomahagen, stating that several hundred lots in the town of Olton stood in his name on the records, and requesting that the lots be listed with them for sale. To this letter, he replied: "There must be some mistake. I never owned but twenty lots in the town of Olton." Upon his failure to execute the deed sent him, this suit was instituted.

The first contention by appellant is that the appellees are not entitled to recover without proof showing that the lots sued for were unsold lots in the town of Olton. They next contend that, because it appears that the trust relation between Tomahagen and the owners of the town site terminated on April 28, 1909, this suit not having been filed until June, 1920, the action was barred by both the statutes of limitation and laches, and that, if there was a mutual mistake made in the reconveyance from Tomahagen to Soash on April 20, 1909, limitation would run against the plaintiffs' cause of action, because, by the use of ordinary diligence, the mistake could have been sooner discovered.

██ Under the contract and plaintiffs' pleadings, they were not entitled to a judgment even against the trustee Tomahagen for any of the lots previously conveyed to him which had been sold to purchasers. The record shows that deeds conveying all sold lots had been prepared in the office of the town site company and sent to Tomahagen, but it was not shown what particular lots were described in the several deeds. The original owners of the town site, under whom plain-

tiffs claim, must be held to know what lots had been sold. Except as to a few lots, no proof was offered showing how many lots had been sold. The burden of proof upon this issue rests upon the plaintiffs. They are not suing Tomahagen for fraud or a breach of trust in conveying lots other than those which had been sold by authorized salesmen. Each of the parties had one of the three lists made at the time of the drawing which showed the name of every purchaser and the lot or lots drawn by him, and, since it is not charged that Tomahagen had conveyed any lot which had not been sold and allotted at the drawing, the rule that a party is not required to prove any fact which lies peculiarly within the knowledge of the adverse party does not apply. By failing to show what lots had or had not been sold, plaintiffs failed to make a prima facie case. Smith v. Clay (Tex. Civ. App.) 57 S. W. 74; Associated Oil Co. v. Hart (Tex. Civ. App.) 10 S.W.(2d) 791.

██ It is not necessary for us to decide whether plaintiffs could recover in an action instituted in the form of trespass to try title, because, by their second pleading, which seems to be sufficient as against a general demurrer, they changed the nature of the suit from trespass to try title into one for the establishment and enforcement of an express trust. This being the nature of the case, the trustee could not question the sufficiency of plaintiffs' title, so long as the trust relationship existed. That relationship existed until it had been repudiated by Tomahagen or until the purposes of the trust had been fully performed. There was no repudiation until Tomahagen's answer was filed, and the trust is not fully executed until all the unsold lots have been reconveyed to plaintiffs. Therefore, the rule that plaintiffs must recover upon the strength of their own title, and which obtains in actions of trespass to try title, does not apply. Leakey v. Gunter, 25 Tex. 403. Plaintiffs are not seeking to reform the deed or correct a mistake in it. Tomahagen was never in possession of any of the lots sued for, nor did he ever claim them or pay taxes thereon. Limitation is not in the case, nor is there any evidence to support the defense of laches and stale demand. Riggs v. Pope, 3 Tex. Civ. App. 179, 21 S. W. 1013; Threadgill v. Bickerstaff, 7 Tex. Civ. App. 406, 26 S. W. 739. A delay which works no disadvantage to another is not laches, and there is nothing in this record which would put the statute of limitation in operation. As between the trustee and the cestui que trust in cases of express trust, the statute of limitation has no application, and time does not commence to run until repudiation or adverse possession by the trustee and knowledge thereof on the part of the cestui que trust. We find none of these elements in this case. So long as the relation of trustee and cestui que trust exists, the holding and every right

of the trustee is that of the cestui que trust. 2 Perry on Trusts (7th Ed.) § 863.

For the error pointed out, the judgment is reversed, and the cause remanded.