J. F. CROSBY ET AL. V. FRANK B. COTTON ET AL.

No. 90.

**Contract to Purchase Land — Cestui Que Trust — Alienation.—**
C. entered into a contract with D. and others to purchase land, etc., he to furnish money for purchases, expenses, and development, and D. and others to attend to purchasing. C. to receive two-thirds of the profits and D. and others one-third, and the title to the land purchased to be taken in the name of C. as trustee. A tract of land was purchased, and D. sold his undivided interest, one-ninth, and appellants became the owners thereof. Appellants brought suit for the interest of D. in the land, and the profits on said purchase, to which demurrers were sustained. *Held*, that under the contract D. acquired a vested interest in the property that he could alienate. Any interest C. obtained under tax sale could not deprive D. of his equitable interest in the land. Seymour v. Freer, 8 Wall., 202.

APPEAL from El Paso. Tried below before Hon. T. A. FALVEY.

*Edwards & Neil*, for appellants.—It appearing from petition that Richard W. Dorphley, in the performance of his part of the contract, acquired such an equitable interest in the land as could be alienated, it was error to sustain the demurrer. Perry on Trust, 3 ed., sec. 386; 2 Pome. Eq., sec. 989; Bisph. Eq., 4 ed., sec. 61; Restraints on Alienation (Gray), sec. 166; Heard v. Wilder, 46 N. W. Rep., 1075; King v. Remington, 29 N. W. Rep., 364.

*Davis, Beal & Kemp* and *W. B. Merchant*, for appellees.—The demurrer was properly sustained, because the contract and deed set out in petition show that the employment of Richard Dorphley involved personal trust and confidence, and that he had no such vested interest in the contract and the trust created thereby as could be conveyed to plaintiffs' vendor. Gano v. Palo Pinto County, 71 Texas, 100; Palo Pinto County v. Gano & Son, 60 Texas, 251; Smith v. Sublet, 28 Texas, 169; Story on Ag., secs. 14, 133; Van Weel v. Winston, 15 U. S., 228.

FLY, ASSOCIATE JUSTICE.—This case was appealed from the District Court on the sustaining of demurrers to the petition and a judgment of dismissal. As the decision of the case turns, as a matter of course, upon the construction to be given the petition, we copy it herein.

After the allegation of names and residences of the parties, it alleged, " That on December 21, 1880, Frank B. Cotton, Richard W. Dorphley, and Noyes Rand entered into a written contract, which was, in substance, as follows, to-wit:

" Whereas, it was agreed between Frank B. Cotton, of Boston, Massachusetts, of the first part, and Noyes Rand, of West Virginia, and Richard W. Dorphley, of Philadelphia, Pennsylvania, of the second part, on the 19th day of November, 1880, as follows: That all purchases of land, leases, mining rights, and interests or real estate in general west of the Mississippi River (not embraced in a certain contract between the parties hereto and their associates, bearing date April 17, 1880), which may be made after November 19, 1880, by either or any of the parties to the second part hereto or their associates, shall be for the joint account and interest of the parties hereto and their associates, and no others, during the continuation of this agreement, or any contract that may be executed in accordance with it; said interest to be apportioned as follows, two-thirds of all profits arising from such purchases to accrue to Frank B. Cotton and his associates, and one-third to Noyes Rand, R. W. Dorphley, and their associates. It is agreed and understood as the conditions upon which the instrument is based, that the necessary funds for making the aforesaid purchases, for meeting necessary expenses, and for such im-

provements or developements as may be agreed upon between the parties hereto, are to be furnished or secured by said Frank B. Cotton and his associates. That said Noyes Rand and R. W. Dorphley will attend, themselves, or through competent representatives, to securing, purchasing, and getting into proper condition for development, improvement, or sale, as may be agreed upon, any purchases that may be made under this agreement. That the party of the first part and his associates shall not be held to any purchases or leases unless approved by him and his associates, or for a greater sum than $3000 for expenses, unless expressly authorized by him or them, and that the title to estates, leases, rights, and interests shall be vested in Frank B. Cotton as trustee, for the purposes hereof.

" Now, therefore, this document is to be replaced by a formal contract as soon as the same can be prepared and executed.

" Witness our hands, this 21st day of December, 1880.

[Signed]        " FRANK B. COTTON, for self and associates;"
              " R. W. DORPHLEY, for self and Noyes Rand."

"That in pursuance of said agreement, said Noyes Rand and R. W. Dorphley selected one C. P. Ehrman as their associate; and if said Frank B. Cotton either had at the time said agreement was entered into any associate, or has since selected any one, plaintiffs do not know who they are, and are not informed that he has any. That said Noyes Rand, C. P. Ehrman, and R. W. Dorphley, immediately after the execution of said agreement, proceeded to do and perform all the acts therein required of them; and in pursuance of said agreement they negotiated the purchase of a tract of land, situated in the county of El Paso, containing about 550 acres, known as Burdett's survey number 2, in section 1, patented to James W. Magoffin, assignee of N. W. Burdett, which land is otherwise known and designated as the " Cotton Addition" to the city of El Paso. That, in pursuance of said agreement heretofore set out, said land was conveyed, on the 12th day of January, 1881, by John B. Tays and James A. Tays, who each executed a deed conveying an undivided one-half interest in said land, to Frank B. Cotton, for himself and as trustee for his associates, and for said Noyes Rand, C. P. Ehrman, and R. W. Dorphley, copies of which conveyances are attached to plaintiffs' petition and made a part of it.

" That from the 21st day of December, 1880, the date of the agreement before set out, until the 15th day of May, 1884, said R. W. Dorphley did and performed all the acts and rendered all the services required of him in accordance with said agreement. That said Dorphley having, up to said 15th of May, 1884, done and performed all acts and services required of him under said agreement, either in person or by competent representatives, he thereby had acquired, both on the 7th day of May, 1883, and on the 15th day of May, 1884, a fixed and vested interest in

said lands, as well as the profits arising from the purchase of said Cotton Addition under said agreement; and that at the said date, 15th of May, 1884, the parties to said agreement had abandoned all active operations under the same, and ceased to acquire or attempt to acquire or purchase any further property, and ceased all operations under said agreement.

" That the price paid for said Cotton Addition was the sum of $12,500, which was advanced by said F. B. Cotton and his associates, if any, in pursuance of said agreement.   That at said date, to-wit, on the 7th day of May, 1883, the entire expenses in carrying out said agreement, in addition to the price paid for said land, amounted to not exceeding $7000, and on the 15th day of May, 1884, the entire expenses, exclusive of the purchase price of said land and including said $7000, did not amount to more than $8000.   That the only assets or property on hand at the date of filing of the original petition, or now on hand, acquired under said agreement, is said Cotton Addition, and all expenses arising under said agreement, including the purchase price of said addition, on the 7th day of May, 1883, amounted to the sum of $19,500.   That the only assets or property on hand at the date of filing the original petition, or now on hand, acquired under said agreement, is said Cotton Addition, and all expenses arising under said agreement, including the purchase price of said addition, on the 15th day of May, 1884, amounted to the sum of $20,500. That on the 7th day of May, 1883, said Cotton Addition was reasonably worth the sum of $100,000, and at no time since, down to the present date, has it been worth less than said sum; and said addition at the date of filing the original petition, to-wit, the 20th day of September, 1887, was reasonably worth the sum of $200,000.

" That on the said 7th day of May, 1883, said R. W. Dorphley, by his deed, conveyed to J. W. Tays a one-eighteenth undivided interest in said Cotton Addition, a copy of which deed is annexed as an exhibit to plaintiffs' petition.   That on the same day R. W. Dorphley executed another deed to said J. W. Tays for another one-eighteenth undivided interest in said Cotton Addition, which deed was not delivered until the 15th day of May, 1884, a copy of which is also attached as an exhibit to plaintiffs' petition.   That the entire vested interest of said Dorphley at the date of the execution of said deeds, was a one-ninth interest in said land, and in the profits arising from said purchase under said agreement, and that by said conveyances a full and complete equitable title to his entire interest was vested in said J. W. Tays, and that plaintiffs were the owners by a regular chain of title, at the date of the institution of this suit, of the entire interest acquired by said Tays under said deeds from Dorphley.

" That on or about the 3rd day of August, 1887, said C. P. Ehrman, associate of said Rand and Dorphley, conveyed a one-ninth interest in said Cotton Addition then remaining unsold, being his entire interest ac-

cruing under the agreement above set out, to said defendant, H. B. Schuler.

"That on the 9th day of July, 1887, Noyes Rand, acting for himself, and claiming to act as agent for said F. B. Cotton, executed a conveyance to said Florie R. Dawley, conveying lots 15, 16, and 17, in block 25 of said Cotton Addition, agreeing in said conveyance to procure a deed from said Cotton to said Dawley.

"That on the 14th day of July, 1887, said Noyes Rand executed a similar conveyance to the defendant R. S. Gutman, conveying lots numbers 14, 15, and 16, in block 16 of said Cotton Addition, and agreeing to procure to said Gutman a conveyance from said Cotton.

"That F. B. Cotton, holding in himself the legal title as trustee to said property, and also said Noyes Rand and H. B. Schuler, as assignee of said C. P. Ehrman, have ever since plaintiffs acquired their said interest in said land as aforesaid, refused to recognize plaintiffs as cestui que trusts, and still refuse to so recognize them, and insist that they have no interest whatsoever in said Cotton Addition, and claim that the interest of said R. W. Dorphley has been forfeited, and are seeking to appropriate said interest to their own use and benefit.

"That by the acts and full and complete performance made by the said Dorphley prior to the 7th day of May, 1883, he had acquired a vested interest in said land and profits, and in the assets of said copartnership. That the agreement set out in the petition created a partnership, which was dissolved by the act of said Dorphley on the 7th day of May, 1883, in executing the deeds to Tays, herein before set out, and that no expenses or charges which have been incurred since said date, save the taxes, are proper charges against plaintiffs' interest in said property.

"That said Cotton and said Rand have conspired together to use and manage said property, and to repudiate said trust, for the benefit and advantage of one or both of them, in this, that notwithstanding the terms of said agreement, said F. B. Cotton has contracted and agreed with said Noyes Rand, without the consent of said Dorphley and those holding under him, and against the wish of these plaintiffs, to pay him the sum of $2000 per annum, from the 10th day of August, 1881, and conspired to charge said sum as expenses of said Cotton Addition, under the pretext that he was so authorized by said agreement.

"That said sum is an exhorbitant and extravagant price, and is wholly unauthorized. That said Cotton well knows that said Rand has time and again changed and altered the map of said addition, which plaintiffs charge to be a fact, at great expense. That said Rand has sold, up to the date of the institution of this suit, with the consent of said Cotton, about $5000 worth of said property, all of which he has appropriated to his own use; and he, with the knowledge of said Cotton, notwithstanding that he has received some $3500 prior to the 6th day of May, 1886,

and the total taxes on said land up to and including the year 1884 was only about $1700, he, the said Cotton, negligently permitted said addition to be sold for the State and county tax for the year 1885. That said sale was made on or about the 6th day of May, 1886, and said property was purchased by individuals, and had not been, at the date of filing the original petition, redeemed by either said Cotton or said Rand.

" That there was situated on said property, at the time of its purchase by said Cotton and others, a comfortable dwelling house and cottage, and a large quantity of valuable irrigable tillable land; that said Rand, with the consent of said Cotton, has taken possession of said house and premises, has expended the proceeds of the sales of land in said Cotton Addition, and has resided upon the same with his family since 1881, and still resides upon said property.

" That with the knowledge and consent of said Cotton, and without the consent of plaintiffs, said Rand has rented out the farming lands upon said Cotton Addition, and collected and appropriated to his own benefit the rents accrued therefrom. That the reasonable value of the rent of said property so appropriated by him is the sum of $2000 per annum.

" That plaintiffs can not be more specific in stating the sums of money collected by said Rand for rents or for sales, because the same is peculiarly within the knowledge of himself and Cotton.

" That since the filing of the original petition in this case, said Noyes Rand and said Cotton have sold about $8000 worth of the lands of said addition, for which they have received said sum, and that all of said sum has been appropriated by said Noyes Rand; and said Noyes Rand is, without the consent of plaintiffs, still comfortably residing in said comfortable house on said addition, without paying rent therefor, and is still, ever since the filing of the original petition, renting the tillable lands thereon, and collecting and appropriating the rents thereof.

" That notwithstanding the proceeds of said sales since September, 1887, amount to $8000, and the rents collected by said Rand and the use of said house free of rent, the said Rand and Cotton conspired together for the purpose of clouding the title of plaintiffs, procured said land to become delinquent in payment of taxes thereon, and about the —— day of ————, 1890, in pursuance of said conspiracy, said Rand purchased said addition in the name of F. B. Cotton, and had tax deeds executed by the collectors of the State and county and the city of El Paso to said F. B. Cotton as an individual owner, and not as a trustee; and said Rand and Cotton, still conspiring together to cloud said title, negligently permitted said property to be sold for the taxes of 1890 to the State of Texas.

" Petitioners further allege, that said Cotton has failed and refused to make sales of said Cotton Addition in order to reimburse himself and his associates in the purchase money invested in said land and expenses in-

curred in relation thereto under said agreement; and he refuses to sell the entire property for a reasonable sum, notwithstanding it has greatly increased in value, and that he has placed restrictions upon the sale of said property that practically prevent sales; and your petitioners verily believe that this course is adopted by said Cotton, in conjunction with his agent, Rand, so as to continue this trust indefinitely for their sole use and benefit, and to deprive plaintiffs of their interest in said property by the statute of limitation growing out of their refusal to recognize plaintiffs' rights.

" Plaintiffs pray that said Cotton and Rand return a full and complete exhibit, showing all sums of money expended under said agreement, and by whom, and proceeds of all property sold that was acquired under said agreement, and how said money has been appropriated and expended, and that an accounting be taken; and that the legal title to one-ninth interest in so much of said land as remains after the settlement of the charges thereon be divested out of said Cotton and vested in your petitioners; and for partition, upon their paying their portion of the charges against said land, if any, which they aver they are ready and have been always ready to do. And in the event the petitioners be mistaken in their right to have the property immediately vested in and set apart to them, they pray that an accounting be taken, and that said F. B. Cotton be removed as trustee, and that said Noyes Rand be ejected from said property, and that the court appoint a suitable trustee or receiver to wind up the affairs of said copartnership under the direction of the court, either by sale of the property sufficient to pay off all such charges as may be established against it, or by allowing the parties hereto to pay their proportion of such charges, and then partition the property between the owners thereof. Or in case the plaintiffs are further mistaken in the character of relief to which they are entitled, that the court adjust the accounts and charges and order a sale of said property, decreeing your petitioners one-ninth of the sum arising from said sale over and above said charges. And they pray for all such further relief, general and special, as they may be entitled to both in law and equity."

Exhibit A, attached to and made a part of the above petition, is as follows:

"*The State of Texas, County of El Paso.*—Know all men by these presents, that I, John B. Tays, of the city of El Paso, county and State aforesaid, for and in consideration of $6250, to me in hand paid by Frank B. Cotton, 'for himself and as trustee' for his associates, and for Noyes Rand, C. P. Ehrman, and R. W. Dorphley, have sold, granted, and conveyed, and by these presents do grant, sell, and convey unto the said Frank B. Cotton, for himself and as trustee for his associates, and for Noyes Rand, C. P. Ehrman, and R. W. Dorphley, a one undivided one-

half of all that certain tract or parcel of land situated in said El Paso County, in said State, and more particularly described as follows. [Here follows the description which is described in plaintiffs' petition.] To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Frank B. Cotton, for himself and as trustee for his associates, Noyes Rand, C. P. Ehrman, and R. W. Dorphley, their heirs and assignees, forever. And I do hereby bind myself, my heirs, executors, and administrators, to warrant and forever defend the said premises unto said Frank B. Cotton, for himself and as trustee for his associates, for Noyes Rand, C. P. Ehrman, and R. W. Dorphley, their heirs and assignees, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

" Witness my hand, this 12th day of January, 1881.

        [Signed]                                  " J. B. Tays."

Exhibit B is a deed, in like form, from James A. Tays to same parties, conveying one-half undivided interest in the same land.

To the above petition, the defendants, in their third amended original answer, filed May 21, 1891, interposed a general demurrer and numerous special exceptions, which demurrer and the following exceptions were sustained by the court, plaintiffs' petition dismissed, and final judgment rendered in favor of defendants, to which plaintiffs excepted, and from which they prosecute this appeal.

" Second Exception.—Because the said petition discloses the fact that plaintiffs' vendor, Richard W. Dorphley, had no such interest in the contract set out in plaintiffs' said petition, and the trust created thereby, as could be conveyed by said Dorphley to plaintiffs' alleged vendor, J. W. Tays, or any other person."

" Third Exception.—Because said petition and contract dated December 21, 1880, shows that said trust so had and secured by defendant Cotton was continuous and unexecuted, and that plaintiffs had no right to the fee of said land, nor any interest therein, until said defendant had been reimbursed from the sale of a sufficiency thereof to repay him the purchase money, and all costs and expenses incurred in the keeping and maintaining of same; said petition nowhere showing the said condition had been performed."

In a case very similar to the one we are considering, the Supreme Court of the United States has held, that the contract was not one of partnership; but the decision of this case does not turn upon that point, and whether the contract set out in the petition herein copied was one of partnership between the parties or not, need not be passed on in this case. Cotton, under the terms of the contract, was to furnish the money necessary for the enterprise, while R. W. Dorphley and his associates were to

attend to securing, purchasing, and getting the land in proper condition for development, improvement, or sale. The fact that the property so bought was to be conveyed to Cotton as trustee did not prevent the interest of each of the parties from vesting under the contract; and Dorphley having done all required of him under the terms of the contract, having furnished his labor for four years in purchasing and getting in proper condition for development, improvement, or sale the land in controversy, he had a vested interest in the property that he could alienate, especially when other purchases under the contract were suspended.

The prime question to be determined is, did an interest in the property purchased and improved under the terms of the contract vest in Dorphley ? If so, it is immaterial what the mode might be, or the time in which he was to reap the benefit. If he had a vested interest, it could not be fettered by any restraints of aliénation, and neither in the contract sued on is there any attempt to curtail his right of alienation. It would not matter whether this interest was a legal or equitable one, the cestui que trust, when it is once vested in him, may dispose of it by alienation or otherwise. This is the well settled law of England, and has been approved and applied in a large number of the American States. "The owner of property is governed by the rules of law, both in the use and enjoyment and in disposing of his property; and the doctrine in question seems to be founded upon the rule, that title to property carries with it the right of alienation and liability for debts, and it seems impossible that there can be any reason for a different rule in public policy, under a free government, having for its object the growth and development of a commercial people." 1 Perry on Trusts, secs. 386, 386a; Seymour v. Freer, 8 Wall., 202.

In the case of Seymour v. Freer et al.; heretofore cited, Henry Seymour and Jeremiah Price entered into a contract containing the following provisions: Price agreed that he would devote his time and attention and exercise his best judgment in purchasing lands, to an amount not exceeding $5000, in the States of Indiana, Illinois, and Ohio, and in the Territories of Michigan and Wisconsin, or in such of them as he should find most advantageous for the interest of Seymour; the contracts were to be made and the conveyances to be taken in Seymour's name; the purchases were to be made after full and careful search for the most profitable investments in tracts of land of moderate extent. Seymour agreed to furnish the $5000; that after five years the lands so purchased should be sold, and Price should receive one-half of the profits for his services. The lands were bought and titles vested in Seymour. This contract was made in 1835. Seymour died in 1837, and Price in 1854. The suit was brought by the administrator of Price in 1864.

Mr. Justice Swayne, in delivering the opinion of the court, says: "We

think Seymour took the legal title in trust for the purposes specified. A trust is where there are rights, titles, and interests in property distinct from the legal ownership. In such cases the legal title, in the eye of the law, carries with it, to the holder, absolute dominion; but behind it lie beneficial rights and interests in the same property belonging to another. These rights, to the extent to which they exist, are a charge upon the property, and constitute an equity which a court of equity will protect and enforce whenever its aid for that purpose is properly invoked. Interests in real estate, purely contingent, may be made the subjects of contract and equitable cognizance as between the proper parties. The object of the trust here was to sell the property within the time limited, and after deducting from the proceeds the outlay, with interest and taxes, to pay over to Price one-half of the residue. To this extent, Seymour was a trustee and Price a cestui que trust. They had a joint interest in the property. Seymour held the legal title, but the rights of Price were as valid in equity as those of Seymour were at law.'' The court in that case held that the agreement did not constitute a partnership, and then says: '' But the result is the same as if we held that the parties were copartners. In that event Seymour would still have held the property as trustee for the firm, according to the rights of the respective members.''

In the contract between Cotton and Dorphley and others there is no specified time in which the sale of the lands was to take place, there being, indeed, no provision for sale at all, as strenuously insisted on by appellees; but the contract provides that the profits to arise from the purchases, not sales, were to be divided among the parties. It may have been contemplated, and doubtless was, that houses should be built upon the land and rented, and whenever that was done, Dorphley or his assigns had a right to his interest in the rents. If the land had been sold, then Dorphley or his assigns would have been entitled to his pro rata share of all moneys arising from the sale of the land over and above the amount expended in improvements or taxes, with legal interest from date of expenditure of the amounts. In this connection, it is scarcely necessary to say, that it is the duty of Cotton to pay the taxes, and that any adverse title that he or any other party to the contract might obtain under a sale for taxes could not deprive Dorphley of his equitable interest in the land.

In the Seymour v. Freer case the deed was made directly in favor of Seymour, without designating any trust; but the deeds to Cotton specify that the conveyance is made '' for himself and as trustee for his associates, and for Noyes Rand, C. P. Ehrman, and R. W. Dorphley.'' If the allegations of the petition of appellants are true—and in testing them under demurrer they are taken as true—Dorphley had done all that the contract required at his hands, and became invested with an interest in the

land, as herein before indicated; and having the interest, he had full power to sell it.

We are cited by appellees to Gano v. Palo Pinto County, 71 Texas, 100, same case in 60 Texas, 251; and Smith v. Sublet, 28 Texas, 169. These cases are not in point. They hold that where a peculiar trust is reposed in a certain person that he had no power to substitute another to perform work for which he has been employed. There is no question in this case as to a trustee trying to substitute another in his place. The contract between the parties, so far as Dorphley was concerned, was an executed one, and there was neither necessity nor effort on his part to substitute any one in his place. He simply sold out his interest.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 13, 1893.

Associate Justice NEILL did not sit in this case.