### HERBERT OIL CO. OF TEXAS v. McCASKEY.

#### No. 2545.

Court of Civil Appeals of Texas. El Paso.
May 28, 1931.

Rehearing Denied July 16, 1931.

Slay & Simon and Mack & Mack, all of Fort Worth, for appellant.

Polk, Sansom & Terrell, of Fort Worth, for appellee.

WALTHALL, J.

On March 31, 1927, Morgan E. McCaskey, appellee, a professional geologist, and Herbert Oil Company of Texas, a Texas corporation, appellant, entered into a written contract in the nature of a joint venture, for the purpose of exploration of lands for the production of oil and gas. Appellee brought this suit based upon that contract. It reads as follows:

"Agreement.

"This agreement made and entered into this 31st day of May, A. D. 1927, by and between the Herbert Oil Company of Texas, a Texas Corporation, party of the first part, and Morgan E. McCaskey, party of the second part, witnesseth:

"Whereas first party is desirous of obtaining for the benefit of itself and second party oil and gas leases, royalties or land in fee, in favorable territory; and to obtain for the benefit of both parties Blocks of oil and gas leases,

"Whereas second party has knowledge as a geologist regarding territory which he considers favorable for oil or gas.

"Now, therefore, in consideration of the above covenant and agreement hereinafter set forth, the said parties agree as follows:

"1. Said second party, agrees to select favorable tracts of land on which oil and gas leases or royalties or fee should be acquired and to make such recommendations as may be necessary to first party and seek by scouting drilling wells and prospective locations, proven, semiproven or wild-cat territory, such favorable tracts of land.

"Said second party shall in his discretion investigate the terms and conditions under which the said properties may or can be purchased or acquired and report the same together with his recommendations to the party of the first part, but it is expressly agreed and understood that party of the second part shall in no wise be authorized to enter into any contract or purchase for or in behalf of the party of the first part unless the said party of the first part has given its authority in writing to execute in specific contract and it is further agreed that the properties acquired under such express authority shall be obtained in the name of the Herbert Oil Company, of Texas, party of the first part unless otherwise authorized and directed by the party of the first part.

"2. Said party of the first part agrees that upon receipt of the above it will, at its option purchase or acquire such oil and gas leased or royalties or fee as it may find feasible or acquire leases in blocks by purchase or agreement with the landowners, lessee or lessor in the territory indicated as favorable by the party of the second part.

"It is agreed that neither of the parties hereto shall make charges for services, information, time or effort in connection with the carrying out of this contract nor shall they charge any salary, it being the purpose and intent of this contract that second party shall have charge of scientific work, selection and recommendation of properties and first party shall have charge of all business details.

"4. In consideration of the information given and services rendered by the party of the second part, first party agrees to pay to the party of the second part, one-half of the net profits from the sale of any and all properties acquired by the party of the first part upon the recommendation and information furnished by the party of the second part, only as to properties which the party of the second part discovers and reports upon independently.

"5. It is further agreed and stipulated by and between the parties hereto that the party of the first part may without the advice, consent or permission of the party of the second part, dispose of any or all of the properties which may or shall be acquired pursuant to the terms of this contract as related in the preceding paragraph.

"6. It is further agreed by and between the parties hereto that the party of the first part shall advance to the party of the second part a sum or sums of money not to exceed in the aggregate, two Hundred fifty ($250.00) dollars per month for the duration of this contract, exclusive of expenses as herein-after set out.

"7. It is further agreed that the party of the first part shall advance the field expenses of the party of the second part together with the expenses of an assistant whenever the services of one shall be deemed necessary by the party of the second part.

"Party of the second part agrees to submit on or before the tenth and twenty fifth day of

each month an itemized statement of the expenses incurred by him in the pursuance of his duties for and in behalf of the party of the first part which have accrued prior to the dates hereinbefore mentioned.

"It is further agreed that the party of the first part shall furnish to the party of the second part an automobile to be used exclusively by the party of the second part except during the time that the said automobile is in the City of Fort Worth, Tarrant County, Texas, during which time it shall be returned to and remain in the possession of the party of the first part.

"8. It is further agreed and stipulated by and between the parties hereto that in the event that any of the properties acquired by the party of the first part of which the party of the second part by the terms of this contract is entitled to one-half of the net profits is sold otherwise disposed of by the party of the first part, the party of the first part in determining the amount of the net profits shall deduct for the expenses of acquisition and disposition together with all other items as advances and expenses made or paid by the party of the first part to or for the party of the second part.

"9. It is further agreed that in the event the properties, either by sale or otherwise do not yield a net profit as hereinbefore stated, the party of the second part shall not be obligated to return any of the said advances and expenses.

"10. It is agreed that said party of the first part shall keep and maintain an accurate set of books showing all receipts and disbursements and that same shall be open to the inspection of second party at his request.

"11. Should party of the first part be desirous of having any particular well, royalty or lease value, leases or tracts of land investigated by second party which itself might designate, second party shall be obligated to make such investigation and report without cost to party of the first part only to the extent of second parties personal expenses. Second party shall not be obligated to perform work of the above nature in excess of eight days in any one month.

"12. It is further agreed by and between the parties hereto that this agreement shall be in force for a period of ninety days from the execution of this contract and shall continue as long thereafter under the same terms and conditions as above expressed as the parties hereto may desire except that it may be terminated by either party upon his or it giving notice to the other thirty days in advance, such notice to be mailed to the usual business address of the party entitled to said notice.

"Witness our hands this the day and year first above witnessed."

Appellee alleged substantially the following: That on July 1, 1927, and while the contract was in force, he discovered, selected, and reported to appellant upon the probability of oil in profitable and paying quantities being produced on blocks 9 and 16, in Coleman county, Tex., out and a part of the A. Gable survey, and otherwise described by survey and abstract numbers, and did communicate said discovery and selection of said land to appellant, and did recommend to appellant that in appellee's judgment said land would be productive of oil in paying quantities, and that in pursuance of and acting upon said recommendation and selection and as a proximate result thereof appellant acquired a lease on said land (other lands are mentioned, but in the course of the trial all other lands were eliminated, and we will refer to them when necessary only in explanation of or in reference to some fact in connection with said blocks Nos. 9 and 16 in Coleman county); that appellant drilled wells for oil on said blocks Nos. 9 and 16, of the A. Gable survey, giving the date, and that both wells proved productive of oil in paying quantities and of the reasonable market value stated; that appellee is entitled, under said contract, to an undivided one-half interest in said blocks of land and in and to all oil or gas produced therefrom, but that appellant has refused to recognize appellee's interest and has sold portions of and interests in said property, has sold large amounts of oil on said leases, and converted the proceeds to its own use, and denies that appellee is entitled to an interest, and repudiated, breached, and violated said agreement, by reason of which appellee is entitled to a one-half interest in the property, a partition of which appellee prays for; that on February 16, 1928, appellant canceled said contract by means of a letter addressed to appellee, and in the letter stated that before making any deals involving any of said properties appellant would communicate with appellee and take into consideration appellee's wishes and desires, but that since said time appellant has endeavored to dispose of said property and offered it for sale without consulting appellee; that by means of which appellee is entitled to have his interest in said property set aside to him, and to have an accounting irrespective of any breach, repudiation, or violation of said contract on the part of appellant and to have a receiver appointed for which he prayed. In lieu of a receivership appellant filed a bond conditioned that it would render to appellee all money or property which might be decreed by final judgment.

Subject to general demurrer, appellant's answer contained general denial and a number of special denials. Appellant specially denied that it had made any purchase as a result of any information furnished it by appellee;

that on February 18, 1928, it notified appellee of its desire to terminate the contract, and that the contract was thereupon terminated; that subsequent to the termination of said contract, and not upon any information or recommendation of appellee, it acquired said blocks Nos. 9 and 16 (and others named); that about February 27, 1929, it sold to the Vacuum Oil Company an undivided one-half interest in an oil and gas lease covering said blocks 9 and 16, and the right to operate and manage said leases, and that it does not have the right to operate or control same, and it is the owner of a one-fourth of the seven-eighths working interest in said blocks 9 and 16, and denies that appellee has any right, title, or interest in, or profits to be derived from, said blocks 9 and 16; alleges that it has performed all of its obligations, promises, and undertakings under said contract with appellee.

Appellee filed a lengthy trial amendment, the substance of which we need not state at this time, but will do so in reviewing such issues made, if any, on the final disposition of the case on the trial. Appellee also filed his first supplemental petition in reply to appellant's amended answer. To all of which appellant replied.

To the accounting feature of the suit an agreement was reached by the parties, in substance, substantially as follows:

The trial of the cause having begun as a jury case on May 13, 1929, and it having become apparent during the trial that the trial would be delayed and prolonged indefinitely on account of the accounting, it was agreed before the close of appellee's evidence, the court having announced that he would submit the case to the jury on special issues, that the issues of fact other than issues arising in connection with the accounting shall be submitted to the jury as special issues, "but that as to all questions of fact and law connected with the accounting to be rendered by the defendant and the correctness thereof, and the correctness of the various items therein contained, same shall be submitted to the court for his decision with the understanding and agreement that the court may at his option refer any matter which he may desire in connection with said accounting to a Master in Chancery, or Auditor, and that if same be done the report of such Master or Auditor shall be submitted to the parties hereto through their attorneys, and due opportunity be given for exceptions and objections to be filed by either party to said report and due opportunity given by the court for a hearing on same, and for such proof as may be necessary or proper to be introduced before the court for a decision by the court on such matters connected with said accounting.

"It is further agreed that, the court having reached his decision on such matters of accounting, the court may then render judgment in accordance with the answers of the jury to the special issues on which the other matters in the case were submitted, and in accordance with the findings of the court himself on such matters of accounting, which shall be the judgment of the court in this case, subject, however, to all legal rights of any party hereto to make such exceptions, objections or assignments of error as he may desire other than on the matters covered by this agreement, it being understood that no objections shall be raised by either party to the fact that said judgment is rendered partly on the findings of the court on said issues of fact in connection with said accounting.

"It is further agreed that no mention shall be made in the judgment of any reference of the matters of accounting by the court to any such Auditor or Master in Chancery as above referred to. It is further agreed that any evidence adduced before the court on any issues contested before him connected with such matters of accounting shall be a part of the record in this case, and that any exceptions or objections or assignments of error in connection with any such testimony so adduced before the court shall have the same force and validity as if made at, or in the course of, or on account of, the jury portion of the trial of this cause."

At the conclusion of the evidence before the jury appellant duly requested a peremptory instruction in its favor, which the court refused.

On questions submitted to the jury, the jury found as follows:

1. On or about the last of June or the first of July, 1927, McCaskey furnished John W. Herbert information concerning the land between Douglas Wells Nos. 1 and 2, and advised him to acquire acreage between said wells for drilling purposes.

2. Appellant acquired an oil and gas lease on block 9, upon which it drilled its first well because of recommendations and information furnished by appellee.

3. Appellant acquired an oil and gas well on block 16, upon which it drilled its second well as a result of recommendations and information furnished by appellee.

4. Appellant did not decide to acquire the acreage contained in block 9 solely because of the donation of said block 9 by Broderick and Calvert and the securing of the thousand dollar dry hole money from the Roxana Petroleum Company.

5. Prior to June 27, 1927, John W. Herbert had not begun negotiations for the acquisition for appellant of the acreage contained in block 16.

6. In the acquisition of blocks 9 and 16, John W. Herbert did not act upon his own opinion based upon information obtained by him independent of any advice or information communicated to him by appellee.

7. Under the terms of the contract of May 31, 1927, it did not become the duty of appellee to communicate to John W. Herbert any and all information which he obtained and had relative to the geology of the land upon which the gas well he was sent to investigate was situated and which surrounded it.

8. Appellee and appellant did not agree that their rights with reference to the Nolan county acreage should be governed by the terms of the contract of May 31, 1927.

Appellant submitted to the court eight special issues to be submitted to the jury, which the court refused.

The court decided and so decreed that the verdict of the jury dealing with block 16 was not sustained by the evidence, whereupon appellee entered a remittitur as to any interest in block 16.

Appellant filed its original motion for a new trial as to the matters submitted to and found by the jury, which motion the court overruled.

A further consideration of the case was then passed for offering evidence in connection with the accounting. The court announced the appointment of Y. Q. McCannon as auditor. The auditor filed his report on the matter of accounting. Both parties agreed that the matters of fact contained in the auditor's report and the items, figures, and calculations were correct, but appellant "excepts as to application of the facts and figures made by said report insofar as they allowed the advances made by plaintiff (appellee) to defendant (appellant) to be deducted from the proceeds in ascertaining the amount due plaintiff, and insofar as said report included in the amount shown to be due plaintiff thereunder the oil runs taken from Block 9." The exceptions were overruled. The court made findings as follows:

"Based upon the foregoing verdict of the jury and all the testimony introduced in the cause, the court finds as follows:

"1. That on May 31st, 1927, plaintiff and defendant entered into an agreement in writing, which is fully set forth in plaintiff's petition, and contemplated an acquiring of oil and gas leases or properties recommended by plaintiff and the handling and disposition of same by defendant in defendant's name, the expense of the properties and advances made by plaintiff to be deducted from the gross proceeds and the remainder to be considered as net profit, of which the plaintiff should be entitled to one-half and the defendant the other one-half.

"2. That there is no evidence upon which to base any finding that plaintiff is entitled to any interest under said contract, and in fact plaintiff is not entitled to any interest under said contract, in that part of the property described in plaintiff's petition as being Blocks Nos. 10, 15, 21, 22 and 28, of the afore-said subdivision of the Weaver Ranch in Coleman County, Texas.

"3. That plaintiff is not entitled to any interest in the aforesaid Block 16 of said subdivision of said Weaver Ranch, by reason of the aforesaid remittitur filed herein by the plaintiff.

"4. That the remaining property involved in the suit is a portion of the oil and gas mineral leasehold estate in and to Block or Lot No. 9, containing 40 acres, of the Andrew Gabel Survey No. 271, Abstract No. 226, Coleman County, Texas, according to a plat of a subdivision of the Weaver Ranch lands in Coleman County, filed in the office of the County Clerk of Coleman County, Texas, on September 21, 1926, and recorded in Book L. B. page 156, of the records of plats in said office, and arising under and by virtue of an oil and gas mineral lease made on June 17, 1926, by and between Leon M. Weaver, as Lessor, and Wm. R. Jewell and W. N. Sill, Lessees, covering 395 acres of land out of said A. Gabel Survey in said county, which said oil and gas lease is of record in Book 150, page 625, of the deed records of Coleman County, Texas.

"5. That as to said mineral leasehold estate in said Block No. 9, the plaintiff has an interest therein to the extent hereinafter set forth, said interest being in the residue of the rights of the lessees under said lease (which rights of the lessees were heretofore acquired by the defendant) after the making of certain sales of portions of said estate, consisting of a sale of an undivided one-fourth (1/4) of the mineral lease-hold estate to McDonald and Campbell, the sale of an undivided one-half (1/2) of said mineral leasehold estate to the Vacuum Oil Corporation (subject to the operating agreement hereinafter referred to), and the sale of an undivided one-sixteenth (1/16) of said mineral leasehold estate to Harry N. Lane; and that the remaining undivided three-sixteenths (3/16ths) of said mineral leasehold estate belongs, one-half to plaintiff and one-half to defendant, so that the respective interests of plaintiff and defendant in said mineral leasehold estate in said Block 9 (subject to said aforementioned operating contract), are undivided 3/32nds each.

"6. That the aforesaid sale of the one-half interest in said lease to Vacuum Oil Corporation included not only Block 9, but also Block No. 16, which adjoined Block 9, and that said Vacuum Oil Corporation purchased an undivided one-half of the leasehold estate in both of said Blocks together, paying to defendant therefor, $40,000 in cash and $42,000 in operating credit (said $42,000 to be credited to the total one-fourth interest in said leasehold estate composed of the respective interests of plaintiff, defendant, and said Harry Lane).

"7. That on February 26, 1929, the defendant, Herbert Oil Company of Texas, and also

McDonald and Campbell (no assignment having been made to said Lane of his interest which showed on the records in the name of Herbert Oil Company of Texas, and the plaintiff's interest also being shown on the records in the name of Herbert Oil Company of Texas) entered into an agreement, for operating, with the Vacuum Oil Corporation, giving to said Vacuum Oil Corporation the right to operate and develop the 80 acres tract composed of Blocks Nos. 9 and 16, and that the undivided ⅗₂nds interest in said Block No. 9, hereinafter awarded to plaintiff, is subject to said operating agreement.

"8. That the sale to the said Vacuum Oil Corporation covered both Block No. 9 and No. 16, and that Block No. 9 was entitled to be apportioned four-fifths (⅘ths) of the cash benefits of said sale, and Block No. 16 with the remaining one-fifth thereof, and that after deducting from said cash proceeds of said sale the amount due Lane and the Commission paid on said sale, the amount of said cash proceeds apportionable to Block No. 9, and in which plaintiff was and is entitled to share equally with the defendant, was and is the sum of $27,475.00.

"9. That the net amount of cash received up to and including March 31, 1930 (which is the date to which, the Auditor's report extends), paid defendant Herbert Oil Company of Texas in oil runs from said Block No. 9 (and referring to the portion of said oil runs to which plaintiff and defendant were entitled), after deducting the expenses in connection with said Block, is the sum of $4,499.78, making a total for the cash proceeds and the oil runs, divisible between plaintiff and defendant of $31,974.78.

"10. That the total expense properly chargeable against said sum, under the aforesaid contract of May 31, 1927, arising in connection with all ventures undertaken thereunder, amounts to the sum of $7,006.89, and that the net amount in which plaintiff is entitled to share equally with defendant (exclusive of oil run since March 31st, 1930) is, therefore, the sum of $24,967.89, and that plaintiff's one-half of that amount is $12,483.94.

"11. The court further finds that said contract of May 31, 1927, provided that properties acquired thereunder were to remain in the name of defendant, and be administered by defendant, but that defendant has breached and violated said contract and has repudiated, contested and denied plaintiff's interest in said Block 9 and the proceeds thereof and the profits therefrom acquired under said contract.

"The court further holds and decrees that the findings set forth in this judgment are meant to make said judgment intelligible within itself, and that such findings are not intended to be exclusive, and that all such further findings and intendments arising from the facts and the law of the case, as may sup-

port this judgment, are hereby found, decreed and adjudged by the court."

The court decreed a recovery by appellee in the sum of $12,483.94, with interest from April 1, 1930, and also awarded to appellee out of the leasehold interest in block 9 an undivided ⅗₂ interest in and to the mineral leasehold estate in block 9, to be held by appellee as a vested interest free and clear of any claim thereto on the part of appellant, subject only to the operating agreement with the Vacuum Oil Company, and that appellee is entitled to receive his proportionate part as stated, of all oil runs to the whole interest in said block 9 on and after March 31, 1930. The court allowed the auditor's fee and taxed same as part of the costs.

The court overruled appellant's motion for a new trial, and the case is properly before this court on appeal.

### Opinion.

Appellant submits error upon the refusal of the court to direct a verdict for it, insisting that the undisputed evidence, coupled with the admissions of appellee, demonstrate that as to block 9 the investigation was made at the instance and direction of appellant, and that the discovery, report, and recommendations were not made independently by appellee.

By reference to the fourth and eleventh paragraphs of the contract as in the above statement, the consideration due appellee is, as in the fourth paragraph, based upon "recommendation and information furnished by the party of the second part (appellee), only as to properties which the party of the second part discovers and reports upon independently," and, in the eleventh paragraph, that, "should the party of the first part (appellant) be desirous of having any particular well, royalty or lease valued, leases or tracts of land investigated by second party, which it, itself might designate, second party shall be obligated to make such investigation and report without cost to party of the first part only to the extent of second party's personal expense." Under this proposition appellant insists that the evidence is undisputed that it did not acquire block 9 upon recommendation and information furnished by appellee, discovered and reported upon independently by appellee. Appellant relied upon its general denial and specially pleaded that appellee at no time recommended the purchase of block 9; that it purchased block 9 as a result of its own independent judgment and selection, and not as a result of any recommendation or selection of appellee acting independently.

To the above appellee submits two counter propositions, in effect: First, that appellant could not avail itself of such defense because same is affirmative matter in avoidance and not pleaded; and, second, if available under appellant's pleading, the evidence fails to show that the Coleman county acreage on

which appellee reported to appellant as being favorable was acreage on which appellee was under duty to report, and that the evidence is sufficient to raise the issue that appellee discovered and reported independently on said area.

We have carefully reviewed all that has been said, both in the pleading and the evidence, by both parties on the issue presented. Omitting a discussion as to the pleading, we have concluded that, while the evidence is not as clear and satisfactory as it should be on the issues of fact contained in appellant's proposition, it is sufficient to require the submission of the issues to the jury as to block 9. Sigmond Rothchild Co. v. Moore (Tex. Com. App.) 37 S.W.(2d) 121.

The statement of facts contains some 380 pages, of which some 245 pages embrace the evidence adduced on the issues submitted to the jury. The evidence contains several maps and reports, the maps made exhibits, and, the evidence referring to each at times not clearly and specifically identifying tract 9, it is difficult to single out and make clear the reference in the evidence, that embraces that area or tract. The trial court, after submitting the issues as to 9 and 16, held that the evidence was not sufficient as to 16, but was sufficient as to 9. We think it would serve no useful purpose to undertake to state the evidence on the issue.

Appellant's proposition complaining of the trial court's eleventh finding that appellant had "breached and violated and had repudiated" and denied appellee's interest in block 9 presents no reversible error. Appellant denied and undertook to sustain its denial that appellee had any interest whatever in and to any of the properties or the products therefrom, in any of the lands involved in the controversy.

The court's twelfth finding indicates the purpose of the court in making such findings.

■ Appellant submits error in the refusal of the court to submit not any one but all of its fourteen requested issues. A number of the issues present only evidentiary facts, and some of the issues requested were presented in the court's main charge. No reversible error is shown.

The record shows that appellant sold in bulk blocks 9 and 16 to the Vacuum Oil Company with no specified price as to either. The court eliminated from controversy in the case all question of appellee's interest in block 16, and appellee filed a remittitur as to block 16. In the court's eighth finding the court finds that block 9 is entitled to be apportioned four-fifths of the cash benefits of said sale (9 and 16), and that block 16 is entitled to be apportioned one-fifth of the cash benefits of said sale, and that, after deducting from said cash proceeds of said sale the amount due Lane and the commission paid on said sale,

the amount of cash proceeds apportionable to block 9, in which appellee is entitled to share equally with appellant, was and is the sum of $27,475. In the court's tenth finding the total expense chargeable is stated and deducted, and the net amount in which appellee is to share is found to be $24,967.89, and appellee's one-half is $12,483.94.

Appellant submits that, if appellant is entitled to recover, the court in apportioning the amount of recovery on 9 and 16 should have allowed one-half of the purchase price to each. The trial court heard evidence as to the ratio of valuation between said two blocks, and fixed the values based on the evidence. We cannot say that the values fixed were incorrect.

In addition to the money judgment of $12,-483.94 awarded appellee on the accounting for the value of the oil runs on block 9, to date of trial, the court also awarded to appellee an undivided 9/22 interest in and to the mineral leasehold estate in block 9, to be held and owned by appellee as a vested interest in fee simple, free and clear of any claim of appellant, and subject only to the operating agreement with the Vacuum Oil Company.

Paragraph 4 of the contract provides that appellee's interest in the properties discovered and reported on independently shall be one-half of the net profits from the sale of any and all properties acquired by appellant under the terms of the contract. Paragraph 5 of the contract provides for the disposition of any and all of said properties by appellant should he so elect. Paragraph 8 provides that, in the event any of the properties in which appellee has a one-half interest is sold or disposed of, in determining the amount of the net profits, the expenses of acquisition and disposition with all other items as advances and expenses made by appellant to or for appellee shall be deducted.

■ Appellant insists that appellee in no event was entitled to recover any interest in the property itself, but that his recovery should be limited to one-half of the net profits realized from the sale of the property after deducting the expense, etc., as provided in paragraph 8 of the contract.

At the hearing on June 5, 1930, including the matters of accounting and all other matters then before the court, testimony of both parties was heard, and it was agreed in open court that the auditor's report, and the items, figures, and calculations therein contained were correct; appellant excepts only to the application of the facts and figures made in said report in so far as they allowed the advances made by appellee to appellant to be deducted from the proceeds in ascertaining the amount due appellee, and in so far as said report included, in the amount shown to be due appellee thereunder, the oil runs taken from block 9. Appellee's exceptions were

heard by the court and were overruled. The disposition made of blocks 9 and 16 to the Vacuum Oil Company was in bulk, reserving to appellant, unsold, a $\frac{3}{16}$ leasehold interest in the two blocks. Appellee is not questioning the disposition made of either of the blocks, and the court in the judgment found that the undisposed undivided $\frac{3}{16}$ interest of the leasehold estate in block 9 belongs one-half to appellee and one-half to appellant, then awarded $\frac{3}{32}$ of that interest to appellee. The interest conveyed to appellee by the judgment was the same interest in kind retained by appellant in the disposition made to the Vacuum Oil Corporation, and we think correctly so.

The contract seems to contemplate a sale of the entire leasehold interest in the land, and that there would be a profit and the interests of appellant and appellee would be in profits; but, where a sale is made and appellant retains unsold an interest in the thing sold, we think that, in the absence of evidence or statements in the contract what was meant by profit, the interest retained by appellant might be considered as the profit made on the sale as contemplated. Otherwise, in the event appellant would make no sale, the profit would be the leasehold in the land itself, less the expenses. The word "profit" is said to be an elastic term, possibly ambiguous, owing to the context in which it is used. Appellant does not suggest that there was an expense incurred in making the sale to the Vacuum Oil Company, and, if so, what the expenses were.

We have concluded that under the facts found appellee's interest was not limited to the value of the oil runs as found, but that he was entitled also to a one-half interest in the unsold property itself, as in the judgment.

Finding no reversible error, the case is affirmed.