## GRENNAN v. FORGERON.

No. 3463.

Court of Civil Appeals of Texas. El Paso.

Feb. 4, 1937.

Rehearing Denied Feb. 18, 1937.

886

Paul Moss, of Odessa, for appellant.

Lee Jones, Jr., S. J. Brooks, W. F. Nowlin, and Templeton, Brooks, Napier & Brown, all of San Antonio, for appellee.

NEALON, Chief Justice.

Appellant sued appellee in trespass to try title and to remove cloud from title to certain oil and royalty interests in described lands in Ector and Live Oak counties. In addition to the usual defenses, defendant sought to establish a parol trust in an undivided one-half interest in said royalty interests and in similar interests in certain other lands in Live Oak county.

The trial resulted in a verdict and judgment favorable to appellee, but subjected his one-half interest to a lien in favor of appellant to secure the payment of $3,358.-08, which was one-half of the purchase price and expense advanced by appellant in furtherance of the venture. This amount bears interest at the rate of 8 per cent. per annum from August 6, 1930.

Upon the trial appellant insisted that under the agreement between the parties appellant was to advance the money necessary to purchase royalties in West Texas in areas with which appellee, who is a geologist, was acquainted, and appellee was to sell the same within one year, and receive for his compensation one-half of the net profits resulting from such resale, after reimbursing appellant for his advances. Both agree that the preliminary examination of the properties was to be made by appellee, but no purchase was to be made unless approved by appellant. In fact no purchases were completed until appellant, after approving them, forwarded the purchase price.

Appellee contended that he was to receive in exchange for the exercise of his skill and special knowledge, as well as his exertions in locating properties, negotiating purchases, and attending to the details of closing trades, an undivided one-

half interest in the royalties themselves. Title was taken in the name of appellant.

In response to special issues the jury found that the agreement between the parties, under which the properties involved in this suit were acquired, was that such properties be taken in the name of J. A. Grennan, with the understanding and agreement that they were to be owned and held equally and jointly by him and appellee, H. S. Forgeron, charged with the purchase price, plus 8 per cent.; that it was not agreed that appellee was limited to a 50 per cent. share of the net profits from the sale of the royalties; and that it was not agreed that unless the royalties were sold within a year from the time of their acquisition appellee would not participate in them.

Appellant urges eight assignments of error. Assignments numbered one, four, six, and seven charge that the verdict as to the character of the contract is without evidence to support it. Our first inquiry then is: Was there sufficient evidence to justify the jury's findings that appellee was to have an absolute one-half interest in the royalties and not merely a one-half interest in the profits resulting from resales which should be made within one year from the acquisition of the properties?

■ Time and again during the course of his testimony appellee said that for his services he was to receive 50 per cent. of the net profits after reimbursing appellant for his advances, and he was emphatic in his denial of appellant's statement that his only interest was to be one-half of the profits made on resale. He testified: "We were to share and share alike in whatever accrued from the investment." To his attorney's inquiry, "In the royalties you purchased?" he replied "Yes." To the inquiry, "Did Mr. Grennan make that agreement with you?" he answered, "Yes." Testifying further, he said, "Mr. Grennan asked me whether we should take the title to the lands in my name, in his name, or in our joint names. I told him as far as I was concerned * * * it would be perfectly all right to take title in his name. He would hold a deed of trust for us." Lawrence Marcus testified that appellant told him in 1931 that he was buying royalties in West Texas and carrying appellee for an interest. In September, 1930, when asked to submit to appellant a form of contract which should embody the terms of their agreement, appellee had his attorney prepare two forms which he forwarded ap-

pellant. Each of these forms contained this language as to the respective interests of the parties:

"Each of said parties to this contract shall receive fifty per cent. of the net profits after the said John A. Grennan has been reimbursed in the amount of the purchase money, together with the amount which the said John A. Grennan is out for expense pertaining to said purchases, plus eight per cent. interest thereon."

Each also expressed the consideration in the following language:

"The consideration of this contract is the time and knowledge of the oil business furnished by H. S. Forgeron on the one hand, and the capital furnished by John A. Grennan on the other hand."

Appellant did not sign either contract, giving no reason for this failure at the time he received the forms, but stating upon the trial of the case that it was because they did not provide that appellee's interest should be limited to one-half of the net profits upon resale, and that all of his interest should terminate unless resale was made within one year. However, as late as November, 1935, in answering ex parte interrogatories, appellant said: "I have no version of my agreement with H. S. Forgeron." J. A. Grennan, Jr., to whom appellant in 1930 confided the management of his interests in the property, and who had correspondence and interviews with appellee, did not testify. However, on October 6, 1930, he wrote appellee for a report of the status of all of the holdings of John A. Grennan, asking specially for a statement "of all royalty agreements and vested mineral rights," and adding, "I desire this for the purpose of the incorporation thereof into your agreement covering joint holdings between yourself and John A. Grennan." In this letter he said nothing of any alleged error in the statement of the terms of the agreement as embodied in the forms submitted by appellee, though those forms had been in his possession nearly a month. Those with whom appellee dealt in negotiating and concluding the transactions involved testified to facts illustrative of appellee's activity in performing his duties in the premises. The evidence warrants each of the findings. It is clear and satisfactory to a degree that would not justify an appellate court in disturbing the verdict.

■ 1. In urging that the evidence shows appellee's interest to be only in a share of the profits resulting from a resale, appellant relies most strongly upon Jowell v. Carnine, 32 S.W.(2d) 511, decided by this court. That case differs from this one materially. In that case there was involved a contract calling expressly for resale within a given time and at a fixed price, in default of which no interest was to accrue in the adventurer who supplied none of the purchase money. The jury found upon conflicting, but sufficient, evidence, that no such condition obtained in the present case. Appellee's rights depend upon the meaning to be given the word "profits."

With reference to this problem, the Wisconsin Supreme Court once said: "Much discussion and some authority is offered as to the meaning of the word 'profits,' with no result save to satisfy us that such word may well carry differing meaning under variant circumstances, and that in ascertaining its significance in this contract we may be aided by the situation and the general purpose to be accomplished." Rogers-Ruger Co. v. McCord, 115 Wis. 261, 91 N. W. 685, 686.

In Bonner v. Cross County Rice Co., 113 Ark. 54, 167 S.W. 80, 82, the Arkansas Supreme Court had before it a case in which Bonner expended no money in the purchase of land, but only contributed his time, labor, skill, and judgment in its purchase. Title was taken in the name of his coadventurer, Johnson. The land could be sold only under the joint direction of all parties concerned. The Arkansas court held that "this gave Bonner something more than a mere interest in the profits after the lands were sold. It gave him an interest in the lands themselves." In the instant case Forgeron made contributions identical with those made by Bonner in his venture, and also contributed his personal expenses.

This court decided, in Herbert Oil Co. v. McCaskey, 40 S.W.(2d) 834, 841, that one claiming under a somewhat similar contract provision was entitled, not only to the value of the oil runs, but "was entitled also to a one-half interest in the unsold property itself," etc.

We now hold in harmony with the cited authorities that Forgeron acquired an interest in the royalties themselves, and not merely in the profits to be made upon resale. To hold otherwise would be to deprive him of his interest in the enhancement of values of the Ector county royalties, as to which there was expert and opin-

ion testimony. He earned one-half of this increment through his exertions, which were rendered particularly valuable by reason of his special knowledge.

2. Respecting the four years' statute of limitation (Vernon's Ann.Civ. St. art. 5529) urged by appellant as a bar to appellee's cross-action, it will be observed that this is a suit to impress upon a deed an express trust. It is not necessary to set aside, cancel, or reform the deed under which Grennan acquired legal title. It involves the title to real estate. Sheffield v. Hogg, 124 Tex. 290, 77 S.W.(2d) 1021, 80 S.W.(2d) 741. In Carl v. Settegast, 237 S. W. 238, the Commission of Appeals held that the four-year statute of limitation has no application to an equitable suit to ingraft a secret parol trust upon a deed absolute in terms. Nor can the four-year statute "be invoked as a bar to the cause of action * * * to recover * * * royalty interest, as such an action is one to recover an interest in land." Colquitt v. Eureka Producing Co. (Tex.Com.App.) 63 S.W.(2d) 1018, 1021. Then, too, limitation does not begin to run against a cestui que trust in favor of a trustee until the latter does some act to repudiate the trust, and knowledge of the act of repudiation is brought to the knowledge of the former. Brotherton v. Weathersby, 73 Tex. 471, 11 S.W. 505; Tomahagen v. Sarber (Tex. Civ.App.) 29 S.W.(2d) 438; Burch v. McMillin (Tex.Civ.App.) 15 S.W.(2d) 86.

The first act of repudiation shown by the record was the filing of this suit.

3. By his second assignment of error appellant claims that appellee abandoned the venture not later than November 13, 1930, and is not entitled to recover. It was stipulated in the record that after November 13, 1930, plaintiff and defendant had no further dealings with reference to purchasing royalties; that the defendant (appellee) notified plaintiff's agent, J. A. Grennan, Jr., on that day that their dealings were ended, and requested that a contract be sent him covering his interests in purchases already made. The stipulation provided that appellant, in entering into it, did not admit that appellee had any interest in the purchases made. This cessation of further activities did not operate as a forfeiture of the interests of appellee, which became vested when the properties were acquired. Crosby v. Cotton, 5 Tex.Civ. App. 583, 24 S.W. 343; Crutcher v. Sligar (Tex.Civ.App.) 224 S.W. 227; Lanier v.

Looney (Tex.Civ.App.) 2 S.W.(2d) 347; Tomahagen v. Sarber (Tex.Civ.App.) 29 S.W.(2d) 438.

4. In his third assignment appellant urges that the court erred in not rendering judgment against appellee because appellee had made no accounting to appellant as to profits arising from the purchase and sale of certain royalties referred to as the Cochran royalties. These were not part of the land described in the pleadings. Apparently they were not purchased for the joint account but were contracted for by appellee after he had received instructions from appellant to suspend activities under their agreement. He then offered to "let in" appellant on a portion of the acreage. Appellee claimed the offer was conditioned upon appellant paying for certain Brunson royalties, as to which appellee had committed himself in furtherance of the original venture. At first appellant rejected the offer, but upon appellee's fixing a time limit within which the purchase price should be deposited, made the required deposit within the prescribed time. Appellee then declined to convey any portion of the property to appellant, and realized a profit upon it.

Appellant did not mention this transaction in his pleadings, nor did he seek to have an accounting for the profits thereof and have a lien impressed upon appellee's interest in the property in controversy, though in his alternative pleading he did allege the amount and items of his advances, and thereby secured the establishment of his lien and decree of foreclosure. No mention is made of this alleged error in appellant's motion for new trial unless, as claimed by appellant, it was sufficiently presented by an assignment that the trial court erred in overruling appellant's motion for instructed verdict. We do not think it was. The original agreement did not preclude appellee from purchasing for his own account, or for the account of himself and others, nor did it require appellee to offer to appellant all opportunities of which he might learn, and it did not require appellant to accept all or any of appellee's offerings. An issue of fact is involved, too, in that appellee testified that the offer to let Grennan participate in the Cochran royalty was conditioned upon Grennan's investing in the more unpromising Brunson royalty, to the purchase of which Forgeron had committed himself, as hereinbefore stated, a condition not accepted by Grennan. The

title to only the described tracts in Ector county and the described lands in Live Oak county were brought "in question" in the pleadings. Defendant alleged in detail the facts upon which he based his claim of title to an interest in these lands. Plaintiff pleaded not guilty, and in the alternative sought judgment for his advances. Nowhere did he allege a cause of action growing out of defendant's refusal to take him into the Cochran deal. Apparently the theory now advanced by appellant was not in the minds of the court or of the parties when the case was tried. It may not be presented for the first time upon appeal Faull v. City of Dallas (Tex.Civ.App.) 97 S.W.(2d) 1031. Certainly in the state of the evidence there was no ground for instructing in plaintiff's favor.

Each and all of appellant's assignments of error are overruled.

5. There is one feature of the judgment entered which was not complained of by appellant, but which we think the court should notice sponte sua. In directing the issuance of the order of sale in favor of appellant, the trial court directed that in the event of an appeal or writ of error from the district court, "no order of sale shall issue hereunder until after the expiration of 90 days from the final disposition of any such appeal or writ of error." We think it was beyond the jurisdiction of the district court to grant this stay of execution, and direct that the judgment be modified by eliminating this provision therefrom, and providing in the usual terms for the order of sale.

As modified, the judgment of the district court is affirmed. Costs of appeal will be taxed against appellant.