Rogers-Ruger Company, Appellant, vs. McCord, Respondent.

*September 4 — September 23, 1902.*

*Contracts: Share of "profits": Cause of action.*

1. In a contract whereby defendant agreed to pay to plaintiff one half of the profits of a resale of certain land purchased through plaintiff's intermediation, the word "profits" is *held* to mean the excess of the money actually received by the defendant over the price paid by him.

2. In an action upon such contract, however, plaintiff may recover if, although plaintiff has not reduced to money the proceeds of the resale (such as promissory notes, etc.), he has so appropriated such proceeds to his own use, as assets of his own, as to constitute an equivalent for reception of their money value.

APPEAL from a judgment of the superior court of Douglas county: CHAS. SMITH, Judge. *Reversed.*

The defendant having, through the intermediation of the plaintiff, obtained from one Lovejoy an option to purchase the timber upon certain lands for $15,500, on September 18, 1901, executed to it a written agreement reciting such option, and agreeing "that, in case of an acceptance of said option and sale of said timber, the said *Warren E. McCord* hereby agrees to give the said *Rogers-Ruger Company* one half of the profits of such sale over and above the purchase price of said timber from said A. P. Lovejoy." On September 24th defendant represented to the plaintiff that $16,000 was the best he could obtain, and paid it $250 as in full of its one half of the profits, which it received and receipted for as in full payment under the previous agreement, in ignorance of the fact that said *McCord* had at that time substantially agreed upon a sale, consummated the same day, at the price of $25,300, whereof $15,000 was in cash, and the balance, $10,300, was agreed to be paid one half at the end of one year and one half at the end of two years, with five per cent. interest, to be evidenced by the promissory notes of the purchasers, Chr. Mueller & Sons. That sale was revocable by either party upon the condition of the estimates resulting in less than 4,000,000 or more than 5,000,000 feet of timber. The estimates, which were received as early as September 24th, fell between the two extremes, and the sale was fully consummated by defendant, he receiving the $15,000 in money and the two notes for $10,300, which he had on hand, undisposed of and uncollected, at the time of the commencement of this suit, and which he testified were entirely good,

and worth their face. Shortly after the 24th of September one of the plaintiff corporation learned—probably by the records—of the sale price of the timber, and demanded of *McCord* payment of one half, which he refused on the ground that he had made full settlement by payment of the $250.

At the close of a trial disclosing substantially the foregoing facts, the defendant moved to dismiss on the ground that the action was brought prematurely, and that the evidence did not disclose that the defendant had, up to that time, received any profits from the sale of the land. This motion was granted, and judgment of nonsuit entered, from which the plaintiff appeals.

*H. V. Gard,* for the appellant, contended, *inter alia,* that the word "profits" in the contract means merely the advance in the selling price over the cost price. Bouvier's Law Dict.

For the respondent there was a brief by *Sanborn, Luse, Powell & DeForest,* and oral argument by *L. K. Luse.* As to the meaning of the word "profits," they cited *People v. Niagara,* 4 Hill, 20; *Rubber Co. v. Goodyear,* 9 Wall. 788; *Freeman v. Freeman,* 142 Mass. 102; 19 Am. & Eng. Ency. of Law, 257.

DODGE, J. The present action is based squarely upon the contract between the parties to enforce payment of money according to the terms of that contract, not to recover damages because of breach or renunciation. It is therefore essential that plaintiff establish those facts which, by the terms of the agreement, were the precedent condition of defendant's duty to pay. 1 Beach, Mod. Cont. § 409; *McCormick v. Basal,* 46 Iowa, 235; *Lake Shore & M. S. R. Co. v. Richards,* 152 Ill. 59, 38 N. E. 773; *Hanna v. Mills,* 21 Wend. 90; *Dingley v. Oler,* 117 U. S. 490, 6 Sup. Ct. 850. One of those conditions is the reception by *McCord* of profits upon a sale made by him above the price paid Lovejoy. Until that situation exists, no cause of action *upon* the contract exists. Fail-

ure to prove it may, therefore, be taken advantage of by motion for nonsuit, and its nonexistence need not be urged by plea in abatement. *Lombard v. McMillan,* 95 Wis. 627, 70 N. W. 673; *Hill v. Am. Surety Co.* 107 Wis. 19, 33, 81 N. W. 1024, 82 N. W. 691.

The question presented to the trial court by the motion for nonsuit was whether the evidence, upon most favorable view, established receipt of any profits by defendant within the meaning of the written agreement. Plaintiff contends that immediately upon sale at a higher price than that paid Lovejoy the profits were made, and, if that be not so, that the taking of negotiable notes by defendant in his own name constituted a receiving by him of the whole purchase price. Much discussion and some authority is offered as to the meaning of the word "profits," with no result save to satisfy us that such word may well carry differing meaning under variant circumstances, and that in ascertaining its significance in this contract we may be aided by the situation and the general purpose to be accomplished. The defendant was the purchaser and owner of the timber, and a dealer therein; the plaintiff made no investment, and had no interest in the property, and obviously was not expected to take any part in its disposal. There was no limitation save the implied one of good faith upon the former's complete discretion as to manner and terms of sale. He might sell in parcels and on various periods of credit; he might sell for a fixed price or one dependent on— indeed, payable from—the timber or lumber produced; he might find it advisable to sell, in part at least, for something other than money, the value of which might be indefinite and only ascertainable by its sale. In the light of this situation we have no doubt that the parties used the word "profits" in the sense of the excess of the money actually received by *McCord* over the price paid by him to Lovejoy, and that his duty to pay would not arise until he should have reduced to money any such proceeds of the sale. Of course, his own con-

duct might vary his liability, or subject him to control by a court, as hereafter more fully pointed out; but, apart from such considerations, it was not contemplated that he should be bound to pay money until he had received it.

· Upon such construction of the agreement plaintiff could not compel defendant to forestall or assume the contingencies of any credit he might in good faith find it necessary to give to a purchaser. It must wait until in due course he had collected the money. This situation could in no wise be modified merely by the fact that such credit was evidenced by promissory notes payable to defendant. The giving of such notes effected no change so long as he merely held them awaiting collection at maturity. If there were no doubt that such was defendant's attitude, the decision of the trial court that no cause of action had arisen would have been right, but the situation is complicated by other facts. In the amplitude of defendant's control over the disposal of this property and of its proceeds is involved the power at least to so appropriate the latter to his own use as to constitute a complete equivalent for reception of their money value. Had he taken as part of the purchase price a house and lot, it would have been within his power, instead of proceeding to realize its value in money, to have elected to retain it as his homestead, so far, at least, that plaintiff might hold him to such election and insist that he must treat it as money. So, too, an appropriation of the notes to his own use, as by discounting them, or applying them in payment of his debts, would leave no doubt that he had elected to treat them as his own, and would arouse his duty to pay as completely as if he had collected them. *McCord's* attitude toward these notes was at least ambiguous by reason of his power to treat them either as mere evidence of an uncompleted payment of sale price, or as accepted by him as and for his own, free from inquiry by plaintiff as to his use or management thereof. If there is any evidence which, most favorably considered, might warrant the conclusion that

he had adopted the latter course, the question should have
been submitted to the jury. The record discloses that *McCord*
knew the financial standing of the makers of these notes to be
such that he was willing to take them "in payment," and that
he considered them worth their face. His mental attitude
toward the notes is forcibly indicated by the fact that some
four months after receiving them he was under the impression
that he had sold them to raise money to buy certain Idaho
lands, and only by reference to his papers did he discover
that he raised that money on other property. He explains his
first testimony by the statement, "I simply had in mind that I
expected to use those notes and some other securities, instead
of giving a mortgage on some property to raise some money,
and supposed I had." After his contract for sale was made,
and estimate completed, so that he knew almost exactly the
amount he was to receive in notes, he went to plaintiff, and
desired to settle up and pay its share of profits upon the
sale so made, inducing settlement at an inadequate amount by
misrepresentation, it is true, but certainly indicating his un-
derstanding that the proceeds of the sale were so to be received
by him that plaintiff's share was presently due and payable.
Thence onward, when plaintiff, learning the inadequacy of
the amount paid to it, demanded the amount due as upon a
completed sale, and finally commenced this suit, defendant re-
sisted such demand on other grounds, never suggesting that he
did not consider himself to have received the full selling price
in such a way as to make him liable as fully as he ever would
be. He also answered in the same spirit, setting up as de-
fense invalidity of the contract sued on, and full settlement
of all amounts due thereon. We cannot avoid the conviction
that from such conduct and circumstances is reasonably pos-
sible the inference that defendant had elected to treat these
notes as appropriated fully to his own use as assets of his
own, and not to hold them merely as evidence of unpaid
sale price of the lands, to be collected for the mutual benefit

of himself and the plaintiff; hence that error was committed in taking that question from the jury.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.