## 8921. STOKES *v.* WALKER, executrix.

1. The term "net profits" means the gain that accrues after deducting losses and expenses.
2. Promissory notes are not payment until themselves paid, in the absence of an express agreement to the contrary.
3. Where a purchaser of certain property agrees to give to the seller half of any net profits accruing from the resale thereof, there can not ordinarily be a recovery under the agreement until the proceeds of the resale have been reduced to money, or so appropriated as to constitute a complete equivalent to the reception of their money value.
4. The petition failed to set forth a cause of action, and the court did not err in sustaining the demurrer and dismissing the petition.

DECIDED JANUARY 22, 1918.

Complaint; from Bibb superior court—Judge Mathews. May 4, 1917.

This was a suit by J. F. Stokes against Mrs. M. S. Walker, executrix of the estate of B. S. Walker Jr., based upon the following contract: "Georgia, Bibb County. January 24th, 1912. I hereby agree to pay J. F. Stokes one half of my net profits accruing from the sale of six hundred and eighty-seven acres of land which Stokes has this day transferred to me under bond for title from B. T. Adams & Co. This agreement to be good for a period of five years from this date. [Signed] B. S. Walker, Jr. Witness, J. A. Jordan." By paragraphs 2 to 5 inclusive the plaintiff alleged that he transferred to Walker his bond for title from Adams & Co., by which they obligated themselves to convey to him the legal title to the 687 acres of land therein described, upon his paying to them $3,831.54, this being the same land referred to in the contract above quoted; that by this contract Walker obligated himself to pay this debt to Adams & Co., take title to the land, put it upon the market, sell it, and pay to the plaintiff half of the net profits; that Walker sold the land to one Vickers for $8,470, transferring to him the bond for title which had been transferred to Walker by the plaintiff, and causing Adams & Co. to execute and

deliver a deed to the land to Vickers, and that after reimbursing himself for the Adams & Co. debt of $3,831.54, it left a net profit of $4,638.46, one half of which ($2,319.23) belonged to the plaintiff, and for the recovery of which the suit was brought. The sixth and seventh paragraphs of the petition show that the sale of the land to Vickers by Walker was consummated in the following manner: that Vickers, after having obtained title to the land as above stated, conveyed it to one B. C. Cathcart, and received from him six notes, one for $900 due January 1, 1913, and five other notes for $1,517.50 each, the first becoming due November 7, 1913, and one on the 7th day of November each year thereafter, including the year 1917, and taking as security therefor a deed to secure a debt from Cathcart, thereby vesting title in Vickers to secure the payment of the notes; that after having so obtained the notes and the deed to secure the debt, Vickers transferred and indorsed to Walker the first five of the notes, and therewith conveyed to Walker the legal title to the said land to secure the payment of the notes, and also conveyed to Walker a tract of land containing 35 acres, at an agreed valuation of $1,500. The petition further shows, that Cathcart paid to Walker $900 in settlement of the note due January 1, 1913; that after Walker's death the defendant, having qualified as executrix of his will, brought suit in the city court of Macon against Cathcart, and on December 19, 1914, obtained a judgment against Cathcart for $6,070 principal, and $855.21 interest to date of judgment, and that thereafter she executed to Cathcart, filed, and had recorded a deed to the said land, for the purpose of levying upon it under the judgment and execution, and on the first Tuesday in March, 1915, under and by virtue of the execution issued under said judgment, the land was sold at public outcry, and she became the purchaser, at a price not disclosed by the petition, after which she obtained from the sheriff a deed to the land. It is alleged that the value of the land was $8,000. The defendant demurred to the petition generally, and demurred specially to the sixth and seventh paragraphs, on the ground that these paragraphs were irrelevant and immaterial. The court sustained the demurrer and dismissed the petition, and the plaintiff excepted.

*L. D. Moore,* for plaintiff.

*Hardeman, Jones, Park & Johnston, Harry S. Strozier,* for defendant.

JENKINS, J. (After stating the foregoing facts.) Counsel for the plaintiff contends that the legal effect of the contract sued upon was merely to constitute Walker the agent of the plaintiff, Stokes, for the purpose of selling the land, and, as compensation for his services, he was to receive half of the profits arising from the sale of the land, after paying off the Adams & Co. debt, and that, since no terms of sale are prescribed by the contract, in the absence of any agreement that Walker should sell upon a credit, the contract means that he should sell for cash; and that when Walker caused the legal title to be transferred from Adams & Co. to Vickers he thereby became immediately liable to Stokes, and it is immaterial to Stokes whether the sale to Vickers was for cash or upon credit, and the taking of the notes by Walker was, so far as Stokes was concerned, the equivalent to payment of the purchase price, and the net profits immediately accrued. We can not agree with this contention. While it is true that an agent empowered to sell for cash only has no authority to extend credit (*Americus Oil Co.* v. *Gurr,* 114 *Ga.* 624, 40 S. E. 780; *Chapman* v. *Americus Oil Co.,* 117 *Ga.* 881, 45 S. E. 268), we do not think that under the contract here involved the defendant was merely constituted the broker or sales agent of the plaintiff to sell the property for him; but, since the title itself to the property was passed by the plaintiff into defendant, and paid for by the latter, the only remaining requirement of the contract was that the defendant account to the plaintiff for half of the net profits accruing from a resale of the property, and, since no limitation as to the terms of the resale was made, none can be supplied, except that the defendant must exercise entire good faith in the use of his discretion. See Rogers-Ruger Co. *v.* McCord, 115 Wis. 261 (91 N. W. 685). So far as appears from the contract, Walker might sell in parcels and on various periods of credit; he might find it advisable to sell, in part at least, for something other than money, which in fact it appears that he did do, having taken as part payment a deed to 35 acres of other land, valued at $1,500. It is a well-settled principle of law that, in the absence of an express agreement to the contrary, promissory notes are not payment until themselves paid (Civil Code of 1910, § 4314; *Brantley Co.* v. *Lee,* 109 *Ga.* 478, 34 S. E.

574); and unless the notes can be considered as payment, the petition fails to show where any net profits ever accrued to Walker. The term "net profits," as used in the contract sued on, has been construed to mean the gain that accrues after deducting losses and expenses. *Tutt* v. *Land,* 50 *Ga.* 339, 350; 5 Words and Phrases, 4781. In the light of the situation disclosed by the petition, the parties must have used the term "net profits" in the sense of the money, or its equivalent, actually received by Walker over the price paid by him to Adams & Co., after deducting any expenses or losses, and his duty to pay would not, therefore, arise unless it be shown that he reduced to money any such proceeds for the sale, or appropriated them to his own use. We do not think that the contract contemplated that the defendant should be bound to pay money until he had received it. Upon such construction of the agreement, plaintiff could not compel Walker to forestall or assume the contingencies of any credit he might in good faith find it necessary to give a purchaser, but must wait until in due course he had collected the money. This situation could in no wise be modified merely by the fact that such credit was evidenced by promissory notes payable to Walker. The giving of such notes affected no change so long as he did not convert them to his own use, but merely held them awaiting collection at maturity. See Rogers-Ruger Co. *v.* McCord, supra. The petition is not based upon a profit having accrued to defendant over and above the $3,831.54 paid by Walker to Adams & Co., by reason of the $900 received in cash, together with the property valued at $1,500, and the valuation of the land as bought in by defendant at the sale had under the judgment obtained on the notes. The petition does not show at what price the land was thus bought in. The petition for the recovery of the net profits is based specifically upon the amount represented by the notes given for the property on its resale, and not for the amount shown to have been realized therefrom. Under our view of the law, the petition failed to show the realization of any net profits, and the court therefore did not err in sustaining the demurrer and dismissing the action.

    *Judgment affirmed. Wade, C. J., and Luke, J., concur.*