NORFOLK & W. RY. CO. v. HALL, State Tax Com'r of West Virginia.

(Circuit Court of Appeals, Fourth Circuit. December 20, 1924.)

No. 2271.

Mines and minerals ⬡87—Privilege tax for coal mining held to apply only to mining for sale or profit.

West Virginia Gross Sales Act, levying an annual privilege tax on "every person engaging or continuing, within this state, in the business of mining and producing for sale, or for profit, any coal," etc., does not apply to those producing coal as an incident to some other legitimate business in which the coal is used, as a railroad company producing coal from its own mines solely for use in the operation of its road.

In Error to the District Court of the United States for the Southern District of West Virginia, at Huntington; George W. McClintic, Judge.

Action at law by the Norfolk & Western Railway Company against Grant P. Hall, State Tax Commissioner of West Virginia. Judgment for defendant, and plaintiff brings error. Reversed.

John H. Holt, of Huntington, W. Va. (Theodore W. Reath, of Philadelphia, Pa., and Holt, Duncan & Holt, of Huntington, W. Va., on the brief), for plaintiff in error.

E. T. England, Atty. Gen. of West Virginia, Charles Ritchie, Asst. Atty. Gen. of West Virginia, and John T. Simms, of Charleston, W. Va., for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. This is a writ of error to the judgment of the United States District Court for the Southern District of West Virginia, at Huntington. Plaintiff in error was plaintiff and defendant in error defendant in the District Court, and will be so referred to herein.

The action is in assumpsit to recover from the defendant the sum of $3,004, being the amount of the privilege tax assessed against the plaintiff by virtue of the provisions of chapter 110 of the Acts of the General Assembly of West Virginia of 1921 (chapter 31a, Barnes' Code 1923), commonly known as the "Gross Sales Act," on 323,000 tons of coal mined by the plaintiff from its own mines in the state of West Virginia, from June 30, 1921, to December 31, 1922, and used in the operation of its engines and business without the state.

Plaintiff denied the right of the defendant to assess the tax, and paid the amount claimed under protest, and the object of the suit was to recover the amount so paid. Defendant appeared and interposed sundry defenses, issue was joined, and the case submitted to the trial court under written stipulation, without a jury. The court rendered judgment against the plaintiff, and dismissed the suit, with costs, from which action this writ of error was sued out.

The following defenses were presented on behalf of the defendant: That the declaration was insufficient in law; that the tax was not paid involuntarily, and hence the amount thereof could not be recovered back; that the suit was in effect against the state; and that the tax was lawfully authorized and assessed. Plaintiff, however, insisted upon its right of recovery because of the unlawful assessment against it, apparent on the face of the act under which the levy was made, and because the assessment was void as imposing a burden upon interstate commerce. In this court, the three first-named defenses were waived, thus presenting solely the question on the merits of whether the tax was lawfully assessed or not. This greatly simplifies the issues, and the case turns upon the correct interpretation of the act under which the assessment was made.

The portion of the act imposing the tax is as follows section 2 [a]: "That from and after June thirtieth, A. D. nineteen hundred and twenty-one, there is hereby levied and shall be collected an annual privilege tax upon every person engaging or continuing, within this state, in the business of mining and producing for sale, or for profit, any coal, oil, natural gas, limestone, sand, or other mineral product, the amount of each tax to be determined and ascertained by the value of the articles produced as shown by the gross proceeds derived from the sale thereof by the producer (except as hereinafter provided), which tax shall be equal in amount to two-fifths of one per centum of the value of the articles as so ascertained. * * *

"If any person liable for any tax under paragraph (a) shall ship or transport his products, or any part thereof, out of the state, and before making sale of such products, shall further manufacture, transform, or consume the same, the value of the products or articles in the condition or form in which they existed when transported out of the state, shall be the basis for the assessment of the tax imposed in said paragraph; and the tax commissioner shall prescribe

equitable and uniform rules for ascertaining such value."

It is a concessuum in this case that the plaintiff owns large tracts of coal lands in the counties of Mingo and McDowell, W. Va., and that it maintains regularly equipped mines and produces a large annual tonnage of coal for use in the operation of its railroad within and without the state of West Virginia, and that the said railroad company did not mine or produce coal save for its own use in its railroad business. It is further conceded that the railroad company was not authorized to engage in the mining of coal for sale or for profit, nor did it do so.

Plaintiff insists that what it does in the mining of coal comes within neither the letter nor spirit of the provisions of the act in question, assessing the tax, which is that "there is hereby levied, and shall be collected an annual privilege tax upon every person engaging or continuing, within this state, in the business of mining or producing for sale, or for profit, any coal," etc. This language makes it entirely clear that the tax in question was imposed upon persons engaged in the business of producing "for sale," or "for profit," coal or other minerals, and has no application to those producing coal not "for sale" or "for profit," but as an incident to some other legitimate business in which the coal is used. The business of mining and producing coal for sale, or for profit, is a very large and important one, certainly in the state of West Virginia, and is well recognized as such, and from which large revenue is derived by the state. Had it been the intention and purpose of the Legislature to make the levy extend to persons or corporations producing coal for their own exclusive purposes, and for use in their business alone, it would doubtless have said so. Certainly it could have so stated, and did not do so; and in the absence of this action on the part of the law-making power, the construction asked to be placed upon the act by this court would be tantamount to the court's levying the same tax prescribed against those mining and manufacturing coal "for sale" or "for profit" as a business, against those who are not so engaged, but are otherwise using their private property in and about their own exclusive business.

Counsel for the defendant in error insist that this view is perhaps a narrow one to take of this statute, and of the meaning of the words "for sale" and "for profit" as used in the act, and contend that the language should have a broader and more extended meaning, equivalent to "engaged in the business of mining coal for benefit or advantage," and that particularly is this true of the word "profit" in the sense in which it is used, as it is a word of variable meaning and of wider significance, sustaining the contention made.

While these suggestions are interesting, they do not impress us as persuasive in determining the construction to be placed upon this act, which is within itself clear, plain, and unambiguous. The levying of the tax was upon those engaged or continuing within the state in the business of mining and producing coal "for sale" or "for profit." This clearly indicated the persons against whom the tax was to be assessed. The profit had relation to the sale, and the meaning of the word "profit," read in that light, is as shown by Webster: "The excess of the price received over the cost of producing and handling or of producing and marketing particular goods." The following cases: Rogers-Ruger Co. v. McCord, 115 Wis. 261, 91 N. W. 685; Burdett v. Estey (C. C.) 3 F. 566, 569; and Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566 —tend to support this interpretation, and in the light of the explicit language used no doubt exists in our mind that the tax assessed has no application to coal produced as in the present case. We have, of course, not lost sight of the fact that in some circumstances the word "profit" may have a broader signification. Herbert v. Shanley Co., 242 U. S. 591, 37 S. Ct. 232, 61 L. Ed. 511.

The meaning to be placed on the latter section of the act above quoted (the second paragraph of section 2 of paragraph A.), relating to products transported without the state, does not militate against the views herein expressed, or serve to sustain the defendant's contention, as that portion of the act applies only to persons who are liable to the tax assessed in the first paragraph of the act, and hence coal transported beyond the limits of the state, against which there was no tax assessed, would not be liable as claimed.

The plaintiff insists that the tax is invalid because it is in violation of the commerce clause of the Constitution as creating a burden on interstate commerce. We do not feel that this question need be passed on in this case, since in our view the act in question levies no tax against property such as is here involved.

The judgment of the District Court will be reversed, with costs.

Reversed.