LESLIE ABBOTT, RESPONDENT, v. TRUMAN RECORD, ETC., APPELLANT. HOMER C. MYERS, RESPONDENT, v. TRUMAN RECORD, ETC., APPELLANT.—233 S. W. (2d) 793.

Kansas City Court of Appeals. Opinion delivered October 2, 1950.

*S. Ralph Stone* and *Elmer W. Ahmann,* for appellant.

*Rufus Burrus* for respondent.

VANDEVENTER, J. (Sitting by Order of the Supreme Court.)—
These four suits are for commissions for selling and supervising the
installation of refrigeration equipment. They were filed in the magis-

trate's court, appealed to the circuit court where they were tried together. A jury was waived and they were tried to the court. There was a judgment for plaintiffs in each of them and the defendant has appealed. Upon motion, an order was made by this court consolidating them on appeal.

## THE BRYANT CONTRACT

Two of the cases arose out of what has been called the Bryant Contract. In the trial, plaintiffs' evidence showed that in January, 1946, the defendant was engaged in selling refrigerating equipment in Independence, Missouri, at 222 No. Liberty. Plaintiff Myers was a salesman and plaintiff Abbott was an electrical engineer, of seven years experience. Defendant employed them to procure business for him by getting customers, who would buy refrigeration equipment. Defendant agreed that if the plaintiffs would get such customers who bought refrigerating equipment and locker boxes, that he would pay each of them 30% of the profit, defendant to retain the other 40%. While working under this arrangement, plaintiff and defendant, in January, 1946, traveling together, went to Latour, Missouri, where they contacted one William E. Bryant, a grocerman, told him their business, gave him some of defendant's literature and the cards of plaintiffs, showing one to be a salesman, the other an electrical engineer working for the defendant, who was doing business under the trade name of Record Refrigeration Service. Bryant told them he was interested in installing a refrigerated locker box system if he could lease a building next door to his grocery store. They told him they would come back again later and discuss the matter further. Sometime about the 1st of March, they did go back, drew up some plans and specifications, figured how many locker boxes Bryant could use, their size and how much it would cost to install the system, which amount was $5850.00. They then gave a carbon copy of the "bid" to Bryant, brought the other copy back and delivered it to the defendant, Record, at all times keeping him informed of their progress. Sometime later, defendant Record phoned to a carpenter, who was working for him at DeSoto, Kansas, instructing him to come to Independence and accompany plaintiffs to Latour to figure the cost of the carpenter work necessary in installing the system. This action on defendant's part was because of a telephoned request by Bryant. The carpenter (Orland Wesley Stodgell, commonly called Budd) testified that he came from DeSoto to Independence at defendant's orders, accompanied the two plaintiffs to Latour, made some measurements of the building in which the locker box system was to be installed, estimated the cost and returned with plaintiffs to Independence. Those figures were turned over to the defendant. Defendant paid Stodgell for this service.

A short time later, nothing further being heard from Mr. Bryant, plaintiff Abbott called him on the telephone and was informed that he had been figuring with other concerns and had let the bid to a local company, as they were $300.00 cheaper. Sometime later, about September, the plaintiffs discovered that defendant Record was shipping refrigerating equipment to Mr. Bryant at Latour and they went down there to see what was being done. They discovered that Mr. Bryant had bought the refrigerated locker box system from Mr. Record and that its installation was almost completed. They examined the files in the defendant's office, which were open for their inspection, and there discovered a copy of a contract that the defendant had entered into with Mr. Bryant for the installation of the same locker box system, the estimates of which they had given to Mr. Bryant on their second trip to Latour. In the files also was a copy of the original estimate or bid that plaintiffs had prepared. The amount was the same, $5850.00, plus an additional $400.00, which was the increase in price of the locker boxes between the time they had made the estimate and the time defendant had entered into the contract with Mr. Bryant. There was also added to the contract a number of locker boxes more than the original estimate for this installation.

All this time, while not regularly employed, plaintiffs were intermittently working for defendant, and were available to finish the installation of the locker system at Latour. In June, defendant told them that locker box equipment was difficult to obtain and he was so busy on other jobs in Kansas, that their selling efforts were terminated and they made no further efforts to obtain purchasers. Plaintiffs went to Latour to see Bryant and his explanation about what had happened was "very vague." They then discussed it with defendant who told them they were entitled to no commission as they had no connection with the Bryant contract, that Bryant just "happened" to come into his office to see about getting the locker system installed. Plaintiffs offered to go ahead with the supervision of the installation, but this offer was rejected. The total amount of the Bryant deal was $6970.00 and they estimated the profit at $2400.00. The defendant had been fully paid but although payments of the commissions had been demanded from him, he had refused to pay.

On this case, the defendant's testimony was that the plaintiffs had nothing whatever to do with the procuring of the purchaser of this refrigerating equipment. Defendant admitted sending carpenter Stodgell with plaintiffs but testified he didn't know where they were going. He also admitted that each of the plaintiffs was around his place of business and did work for him after July, 1946. His evidence further was that Mr. Bryant had seen the advertisement of the defendant in the Kansas City Star and in the telephone classified directory, had voluntarily come to that place of business in Independence, and without any inducement or assistance from the two plain-

tiffs had independently entered into the contract with defendant. Bryant testified that the plaintiffs did at one time come to his place of business at Latour, told him they were from Independence and talked to him about locker box systems, he thought it might have been in March, 1945, that some measuring of the premises was done but that he never entered into any contract with them and that later, after seeing defendant's ad in the Kansas City Star, he went to his place of business and there contracted for the installation of the locker box system. He further stated that he had originally had a contract for its installation with the Sedalia firm of Moore and Richards but that Moore died and nothing was done in relation to that contract. It was after the contract with Moore and Richards had been abandoned that he contacted the defendant. Defendant admitted that the profit on the Bryant deal was $1597.41 and that defendant had not paid the plaintiffs. Each of the plaintiffs sued for $700.00. The court rendered judgment against the defendant and his bondsman for each of the plaintiffs on this transaction for $479.22 with interest from August 14, 1947, amounting to $54.84. This was on the basis of a profit of $1597.41.

Where a cause at law is tried to the court without a jury, the appellate court on review must, under the statutes, review the case upon both the law and the evidence, as in suits of an equitable nature, and cannot set aside the judgment unless clearly erroneous. While it is a trial de novo in this court, great deference must be paid to the decision of the trial court, who by reason of seeing and hearing the witnesses, was better able to judge their credibility than we, who read only the cold record. Union National Bank of Wichita, Kansas v. Lamb (Mo. Sup.) 227 S. W. (2d) 60. Krueger v. Fitzpatrick et al., (Mo. App.) 229 S. W. (2) 255. Consentino v. Heffelfinger (Mo. Sup.), 229 S. W. (2) 546. In re Priest's Estate and McMurry v. Pickett (Mo. App.) 227 S. W. (2) 474. Key et al. v. Kilburn (Mo. Sup.), 228 S. W. (2) 731. Beery v. Linstorm (Mo. App.), 228 S. W. (2) 814.

We have carefully reviewed the evidence in this case as to the Bryant matter and have arrived at the conclusion that the trial court was correct in rendering judgment for the plaintiffs. We have read and considered the cases cited by appellant and we take no issue with the law declared therein. Each case, however, was decided on its own particular set of facts. The facts in none of them were the same as in the case before us. If the court believed the evidence of plaintiffs, he was fully justified in rendering judgment for them. He was not required to believe defendant's evidence, nor are we. We believe that plaintiffs were the procuring cause of this sale and are entitled to their compensation. (See LeCompte v. Sanders (Mo. App.) 229 S. W. (2) 298.) The evidence preponderated in favor of

plaintiffs and the trial court's judgments on these two cases should stand.

## THE DARNELL CONTRACT

There is only a slight difference in the testimony of plaintiffs and defendant in the two claims growing from the Darnell contract, but it is vital. These two plaintiffs procured a contract with one Darnell for the installation of a refrigerated locker box system. The system was installed and Darnell agreed to pay approximately $15,000.00 for its installation. There remained unpaid on that job, the sum of $1485.00. The plaintiffs contended that their commission should be paid as soon as the amount thereof was ascertainable and the defendant contended that it was to be paid only when and if the contract price had been fully paid by the locker box system purchaser. An additional but significant fact was that the defendant, without the knowledge and consent of the two plaintiffs, in writing, released all lien rights he might have to secure the payment of the unpaid balance in the Darnell Locker Box Plant. This release, after listing the refrigerating equipment, states:

"Independence Mo.

October 10, 1946

For value received all of the *equipment* furnished for the Darnell

Locker Plant together with all labor and services is hereby released from all *lein* rights.

(Signed)     Truman Record."

The court rendered judgment for each of the plaintiffs in the Darnell matter for the sum of $428.00 with interest at 6% per annum since August 14th, 1947 or $49.28. The sum of $428.00 was the amount sued for but less than actually proven to be 30% of the amount admittedly due.

There is no dispute as to the amount still due from the Darnell job upon which the commissions had not been paid. It is merely a question of when those commissions became due. If the testimony of plaintiffs was true, then they were due from defendant when the job was completed and the commissions ascertainable. If defendant's contention was true, then they were not due until the final payment from the party contracted with had been paid to defendant. The court decided in favor of the plaintiffs.

But there are other factors that should be taken into consideration. The evidence showed that it was the duty of defendant to collect for the equipment. The defendant, by releasing the lien he had upon the Darnell Locker Box Plant, thereby made it more difficult, if not impossible to collect, and this was done without the consent of plaintiffs. This act on the part of defendant showed that he considered the balance due as an asset of his own and over which plaintiffs had no control. Defendants should not be permitted to

voluntarily do an act that would make collection of the unpaid balance more difficult or impossible, and then plead non-payment thereof as a defense.

In Westinghouse Company v. Tilden, (Nebr.) 96 N. W. 74, a case where the facts were very similar to the one here, the court held that the agent was entitled to his commissions, although the defendant had not collected the price of the property sold. This for the reason that it had been negligent in attempting to collect and had extended the time of payment. The court said:

"If it desired to extend time of its patrons, it had no legal right to ask the plaintiff to await their convenience in the collection of the amount due him as commission on these notes. We think that the facts amply justify the court in finding that the plaintiff was entitled to recover for the amount of his commission, although not collected by the defendant because of the negligence of the defendant in making collections."

In the case at bar, the defendant had released all materialmen and mechanics' liens. We can see no distinction in principle in that action and in extending time for payment. If anything, the relinquishment of a lien would be more apt to make collection difficult than an extension of time for payment.

We have read the case cited by appellant, Rogers-Ruger Co. v. McCord, 115 Wis. 261, 91 N. W. 685, and we think it supports our conclusions herein.

While the evidence showed a suit was pending between defendant and Darnell for the remainder due, this does not alter the situation. All these matters raised a question of fact, were considered by the court, which, from its advantageous position, we think, arrived at the right conclusion and we will defer to its judgment.

The judgment in each of the four cases should be affirmed. It is so ordered. *Dew, P. J.,* concurs. *Broaddus, J.,* concurs. *Cave, J.,* not sitting.