**Edward H. BECKEMEIER, Plaintiff-Appellant,**

**v.**

**Rose BAESSLER and Olivia E. Mathews, Defendants-Respondents.**

**No. 44070.**

Supreme Court of Missouri.

Division No. 2.

Sept. 13, 1954.

and materials furnished in "remodeling, alteration and improvement" of the 4–family flat at 5024 Chippewa in St. Louis, and enforcement of such judgment under the mechanics' and materialmen's lien statutes. Chapter 429. (All statutory references are to RSMo 1949, V.A.M.S.) From the adverse judgment for defendants, plaintiff appealed to the St. Louis Court of Appeals, which, by opinion reported at 261 S.W.2d 511, properly transferred the cause to this court, because the amount in dispute, i. e., the principal sum of $7,399.79 with interest thereon from July 21, 1949, to June 30, 1952, the date of judgment, exceeds $7,500. Article V, Section 3, Constitution of 1945; Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054, 1061(1); Harvey v. Peoples Bank, Mo.Sup., 136 S.W.2d 273(1).

This cause having been tried by the court, sitting as a jury, it is our duty to "review the case upon both the law and the evidence as in suits of an equitable nature." Section 510.310 subd. 4; Scott v. Kempland, Mo.Sup., 264 S.W.2d 349, 355(10); Howell v. Reynolds, Mo.Sup., 249 S.W.2d 381, 387 (13). However, "(t)he judgment shall not be set aside unless clearly erroneous", Section 510.310, subd. 4; Cosentino v. Heffelfinger, 360 Mo. 535, 229 S.W.2d 546, 549 (1); Truck Leasing Corp. v. Esquire Laundry & Dry Cleaning Co., Mo.App., 252 S.W. 2d 108, 109(1), and we should accord due deference to the findings of the trial court whose opportunity to judge of the credibility of the witnesses is far superior to ours. Williams v. Diederich, 359 Mo. 683, 223 S.W.2d 402, 404(4); Costello v. Moore, 357 Mo. 972, 211 S.W.2d 921, 924(2); Abbott v. Record, Mo.App., 233 S.W.2d 793, 796(2).

Allen H. Whittington, St. Louis, for appellant.

Bartley & Bartley, Ralph H. Schnebelen, St. Louis, for respondents.

STONE, Special Judge.

In this action plaintiff, a building contractor, seeks "a general judgment" for $7,399.-79 with interest from July 21, 1949, for labor

In his lien account, copy of which was filed with his petition, plaintiff listed charges aggregating $11,149.79, consisting of charges aggregating $7,380.96 "for rooms added to building" (i. e., for four enclosed rear porches with one porch over another in each of two two-story additions, one at the rear on the west and one at the rear on the east) and charges aggregating $3,768.83 for "total *interior* alterations" (which, how-

ever, included charges for repairing the garage and for work on the rear fence and walk), listed credits aggregating $3,750, and showed a balance due of $7,399.79. There was no *written* agreement concerning the work or any part thereof. Plaintiff seeks recovery on quantum meruit, although he stated upon trial that he had agreed *orally* to build the west two-story addition for $2,500 and later the east addition "for the same as * * * the other one cost." Plaintiff was to do certain tile work in one of the kitchens for $350. Neither plaintiff nor defendants claim that there was any agreement as to the amount to be paid for other work done. Defendants contend that plaintiff agreed orally to build *both* two-story additions for $2,500; and, that they have paid *$3,950* to plaintiff, of which $2,500 constituted full payment for the two additions and the remaining $1,450 was "for other work" done by plaintiff.

Plaintiff's case in chief consisted of his own testimony and the exhibits offered in connection therewith. Plaintiff said that, when he first talked to defendants in August, 1948, about "making alterations and putting up some rooms in the back," there was no discussion of prices. Defendants told him "to go to work and get the garages repaired, they were in awful dilapidated condition." In his lien account, plaintiff listed the following charges (typical in character) aggregating $432.26 for work on the garage: "Paint, $15.00; Lumber, $125.36; Labor, 237.60; Insurance and taxes, $15.00; Contractor's 10%, $39.30." According to plaintiff, the lumber used in repairing the garage *"was new lumber."*

Frank X. Flavin, who had been in the construction business for 40 years and a contractor for 11 years, testified for defendants. Flavin said that he had, at defendants' request, carefully inspected the premises at 5024 Chippewa and examined plaintiff's lien account in an effort to determine whether the charges therein were reasonable and proper; but that, due to the fact that the lien account was not itemized more particularly and specific information was not given therein concerning materials and labor alleged to have been furnished, he had been unable to determine whether the charges were reasonable. "There's no way that I can get any prices, on the way this is made up * * *. After 40 years checking work * * * can't come to any conclusion." However, witness Flavin said that "you could see what was done on the garage," and that it had been repaired with *"used lumber."* His estimate of the reasonable value of the repairs to the garage was $158.

Although in his opening statement plaintiff's counsel said that soon after plaintiff started work on the west two-story addition "the kind of material that was installed was changed," referring particularly to flooring, window frames, and "type of coating on the outside," the evidence on this subject was fragmentary and obviously inadequate to explain or justify the material difference between plaintiff's admitted contract price of $2,500 for this addition and the aggregate charges of $3,690.48 for each such addition in his lien account. With respect to the alleged changes, plaintiff mentioned only the laying of a concrete floor (for which we find an entry in plaintiff's daybook, "concrete floor extra—$20.00") and some change in "the insulation," the nature and character of which, and the charge for which, are not shown in the record. And, plaintiff conceded on cross-examination that he had sent a bill dated May 12, 1949, for "new porch 2 story west side 5024 Chippewa street, per contract, $2500" and "new porches east side 5024 Chippewa street per contract, $2500." Mrs. Baessler, one of the defendants, testified that she called plaintiff on the telephone and asked, "'What do you mean by this $2500 on each porch?' And he said 'Well, that's what I mean.' So I said, 'Well, * * * isn't that too much? You said $25 for the four.' 'Oh no I didn't,' he says 'I'm hooked * * *' he kept yelling over the 'phone. And he hung up on me."

Defendants offered in evidence the application "for a (building) permit. * * * to repair and enclose rear porch at No. 5024 Chippewa" (apparently prepared by plaintiff who received the building permit), which showed an estimated cost of $1,000 for the west two-story addition. In response to the question, "When did you first send a

bill for the porches?", plaintiff testified that "we collected that as we went along." Mrs. Baessler, one of the defendants, said that "I paid him (plaintiff) as he went along"— "I was all paid up until * * * he was all finished"; and her sister, Mrs. Mathews, the other defendant, said that "every time he asked for money we gave it to him" as the work "went along." Mrs. Baessler also said that, "as time went on," plaintiff "kept putting me off" about furnishing an itemized statement; that "I told him I wouldn't give him any more money until I had an itemized statement on everything that he was using and the money and material—so he wrote out an itemized statement and * * * brought it out to the house"; that "I had all my people there, and we went over the figures and everything, and we asked him different prices of different things, (and) he couldn't tell us what they were"; that plaintiff said "Let me take this paper home"; and, that "we never did receive that back again."

Prior to trial, defendants had, upon motion, sought and obtained an order of court, comprehensive in language and scope, requiring plaintiff to produce for inspection and copying "(a)ll books, records and invoices regarding the work allegedly done by the plaintiff" and "(a)ll cancelled checks and receipts showing wages paid * * * and showing all materials purchased." In response to this order of court, plaintiff produced only a small bound daybook. The only explanation of plaintiff's failure to supply other records was that "a lot of that was lost from the moving because a lot of that got mixed up." In response to a general question as to "whether or not that (lien account) is a correct list of the items of labor and material which went into the building at 5024 Chippewa Street," plaintiff testified that "it is, except * * * there is a mistake there (of) about * * * a hundred dollars," and in response to another general question as to "whether or not those prices and charges (in the lien account) were at that time the usual, ordinary and customary prices for labor and material in the City of St. Louis, Missouri," plaintiff answered "they were." This simple confirmation of the quoted general questions by his counsel constituted plaintiff's "proof" of the reasonable value of the work and labor done and the materials furnished, for which recovery was sought in quantum meruit.

Plaintiff also asserts that his claim is supported by the small bound daybook, the entries in which are dated during the period between August 12, 1948, and July 21, 1949, although many of the later entries are not in chronological order. Most of the entries showing labor during the period from August, 1948, to May, 1949, include given names, i. e., "Geo", "John", "Sig" or "Edw"; but, only two of the numerous entries reflecting labor during June and July, 1949, refer to any name. Some of the entries purport to reflect the character of work done, e. g., "June 9–10–11–12—Take down closet, cabinet, plaster & repair floor—Take down chair rail—Labor 2 men —4–3–3," but many entries include no suggestion as to the nature or character of work done, e. g., "June 23—2 men 8 hrs— 1 man 6 hrs." None of the entries show any wage rate.

We are unable, with careful review and painstaking analysis, to relate the entries in the daybook to the charges in the lien account or to confirm those charges from the daybook. There is nothing about the daybook which serves to establish its authenticity, reliability or probative value, or which tends to inspire confidence in the book, its contents or its compiler. On the contrary, the entries in the book would seem to indicate that, to state it charitably, the account was kept ineptly, loosely and carelessly.

Turning to the lien account, we find that all of the charges are undated and that, although some itemization has been attempted, many "round figures" are included and substantial lump sum charges for labor are shown, e. g., "labor, $58" under Item B(8) for "first floor west", "labor, $170" under Item B(9) for "rear yard fence and walk", and "labor, $628.39" under Item B(14) for "second floor west side". Witness Flavin called attention to the fact that the "materials" of $10, which were charged under

786

Item B(12) for "front hall painting, patch plaster", "seems like an awful small amount of material to take $111 worth of labor to put it on".

Plaintiff argues that, since the lien account was received in evidence without objection, defendants "should not now be permitted to argue the sufficiency of the account at all." The lien account, as filed in the office of the Circuit Clerk, was competent as part of plaintiff's attempted proof that he had taken the necessary statutory steps to entitle him to a lien, but offering the lien account in evidence did not establish defendants' indebtedness thereunder. "It will not do to say that plaintiffs can make out an account and embody that account in a mechanic's lien paper, and have it filed as provided under the statute, and then introduce that lien account as evidence of the correctness of the alleged indebtedness." Marshall v. Hall, Mo.App., 200 S.W. 770, 773(6). Furthermore, although plaintiff's testimony suggested that the lien account had been prepared from certain "data", this "data" was not offered in evidence or otherwise identified as to form or content; and, if (as plaintiff's response to the order to produce books and records necessarily indicates) plaintiff had no records other than the daybook, it is to us inconceivable that a statement of account could have been prepared from the daybook with any respectable pretense of accuracy.

To meet defendants' earnest insistence that plaintiff had done no work at 5024 Chippewa after July 4, 1949, and that therefore his lien account had not been timely filed on January 4, 1950, Section 429.080, plaintiff called in rebuttal one George Lenk, a "laborer" who, however, said that from time to time he had done plastering, painting and paperhanging, and that "I done all the papering" at defendants' flat—"in the decorating line, I done most of that." Lenk produced two bills dated June 30, 1949, for wallpaper purchased by him for use (as he said) at 5024 Chippewa. Lenk's testimony was that "the paperhanging job" at defendants' flat was delayed for several days; that the "paperhanging was put up after the 4th of July"; that "with interruptions, it would take * * * about a week"; and, that he continued to work for plaintiff on the job at 5024 Chippewa "I would say to very near the last part of July." Incidentally, Lenk was still working for plaintiff at the time of trial.

Witness Lenk said that, for the entire job at defendants' flat, he had purchased "around $30 worth" of wallpaper. The two wallpaper bills dated June 30, 1949, for which Lenk said that "Mr. Beckemeier gave me money," aggregated $20.03. The only wallpaper charge in plaintiff's daybook was for $40.00 on July 1, 1949. Plaintiff's lien account includes charges of $105.60 for wallpaper. Although, with the sole exception of the entry "July 7—1 man—2 hrs.," each entry in plaintiff's daybook subsequent to July 4, 1949, indicates the nature of the work alleged to have been done, there is no reference to wallpaper or papering in any of those entries; and, when plaintiff detailed in evidence the labor and material claimed to have been furnished after July 4, 1949, there was no mention of wallpaper or papering.

The foregoing will suffice to indicate the state of the record and the character of the evidence upon which the trial court found "the issues joined in favor of the defendants and against the plaintiff," "that the plaintiff's mechanic lien account was not filed within the time prescribed by law," and "that the plaintiff's mechanic lien account is not a just and true account under the law." Plaintiff now says that the trial court "mistakenly concluding that there was no lien, disregarded entirely the proven indebtedness" upon the theory of "no lien—no claim." However, the record affords no support for this contention, for plaintiff sought "a general judgment" against defendants, and the trial court found "the issues joined in favor of the defendants and against the plaintiff." Furthermore, in cases tried upon the facts without a jury, all issues of fact "upon which no specific findings are made shall be deemed found in accordance with the

result reached." Section 510.310, subd. 2; Decker v. Evans, Mo.Sup., 221 S.W.2d 127, 130(4); Maas v. Dreckshage, Mo.App., 244 S.W.2d 397, 403(7).

■ The burden of proof, which is that of establishing the affirmative of the ultimate issue, never shifts throughout a trial but remains upon the party asserting it, Been v. Jolly, Mo.Sup., 247 S.W.2d 840, 854(5), and this rule " 'is important and indispensable in the administration of justice and constitutes a substantial right of the party upon whose adversary the burden rests.' " Clapper v. Lakin, 343 Mo. 710, 123 S.W.2d 27, 33(5). Furthermore, it is well established "that the triers of fact under their duty to weigh the evidence may disbelieve evidence although it is uncontradicted and unimpeached." State ex rel. Rice v. Public Service Commission, 359 Mo. 109, 220 S.W.2d 61, 65(10).

■ Where, as here, proper determination of the essential issues of fact depends so largely on the credibility of witnesses and on the weight and value to be accorded to their testimony, "a situation prevails wherein the application of the rule of deference to the findings and conclusions of the trial [court] is especially appropriate and necessary." State ex rel. Taylor v. Anderson, 363 Mo. 884; 254 S.W.2d 609, 615(8). It is apparent in the instant case that the trial judge accorded little, if any, weight to the testimony of plaintiff and witness Lenk, Veal v. Leimkuehler, Mo.App., 249 S.W.2d 491, 496(9); and, from the record as a whole, we cannot find that the court erred in so doing. Many factors may enter into determination of the credibility of witnesses and the weight and value to be accorded to their testimony. "The manner in which a witness testifies may give rise to doubts of his sincerity and create the impression that he is giving a wrong coloring to material facts." 20 Am.Jur., Evidence, Section 1177, p. 1027. Even the cold record in the instant case affords some insight into plaintiff's attitude and the manner in which he testified. We observe that plaintiff frequently made voluntary and unresponsive statements, notwithstanding objections made and sustained thereto; and, although the court cautioned plaintiff that "your best interests are served if you will wait for a question and answer only the question," plaintiff started into another unresponsive answer to the second succeeding question which prompted the court to interrupt again.

■ Bearing in mind that the burden was on plaintiff, Fitzgerald v. Schaefer, Mo.App., 216 S.W.2d 939, 940–941(2), to prove his case on quantum meruit—an obligation "founded upon the fundamental principle that no one ought 'to enrich himself unjustly at the expense of another,' " Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874, 884(17), 179 S.W.2d 108, appeal dismissed 322 U.S. 707, 64 S.Ct. 1049, 88 L.Ed. 1551; Bailey v. Interstate Airmotive, Inc., 358 Mo. 1121, 219 S.W.2d 333, 338(4–6), 8 A.L.R.2d 710, or as otherwise stated an action to recover " 'as much as he has deserved,' " Rodgers v. Levy, Mo. App., 199 S.W.2d 79, 82(5); Black's Law Dictionary, 4th Ed., p. 1408—our independent review and consideration lead us to the same conclusion as was reached by the trial court. Since, in our view of the case, plaintiff failed to carry his burden of proof and should not have a personal judgment against defendants in any amount, it becomes unnecessary for us to discuss the several objections interposed to enforcement of a lien, although we may add that we regard them as substantial and meritorious. The judgment for defendants should be and is affirmed.

LEEDY, Acting P. J., and DEW, Special Judge, concur.